IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-22643-CIV-COOKE/GOODMAN

FEDERAL ELECTION COMMISSION,

    Plaintiff,

v.

DAVID RIVERA,

    Defendant.

_____/

## ORDER ON FEC'S PRIVILEGE AND WORK PRODUCT CLAIMS

Following a discovery hearing and supplemental briefing, this Order resolves a discovery tussle about two interview reports over which Plaintiff Federal Election Commission ("FEC") has asserted the law enforcement investigatory privilege and the work product doctrine. The Undersigned has reviewed *in camera* the reports of investigation, which were filed under seal [ECF No. 115], and I also reviewed a declaration filed by the FEC's Acting General Counsel [ECF No. 117-1] and memoranda of law filed by the FEC and Defendant David Rivera ("Rivera") [ECF Nos. 118-119].

For the reasons outlined in greater detail below, I have determined that the two reports are both privileged and encompassed by the work product doctrine. Rivera is not entitled to those two reports in discovery in this case. But, as explained below, the FEC's position is on more-sturdy legal ground for the work product assertion than for the law

enforcement investigatory privilege, which was established on less-than-overwhelming grounds.

I. **Factual Background**

The FEC is an independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of the Federal Election Campaign Act, 52 U.S.C. § 30101-46 ("FECA" or "Act"). *See generally* 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109. Congress authorized the FEC to "formulate policy" under FECA (*see, e.g.*, 52 U.S.C. § 30106(b)(1)), and to make rules and issue advisory opinions. 52 U.S.C. §§ 30107(a)(7), (8); *id.* at §§ 30108; 30111(a)(8); *see also Buckley v. Valeo*, 424 U.S. 1, 110-11 (1976). The FEC is also authorized to institute investigations of possible violations of the Act, 52 U.S.C. § 30109(a)(1)-(2), and the agency has exclusive jurisdiction to initiate civil enforcement actions in the United States district courts. *Id.* at §§ 30106(b)(1), 30107(a)(6), 30107(e), 30109(a)(6); *see also* ECF No. 117-1, ¶ 2 (Decl. of Lisa J. Stevenson).

In its Amended Complaint in this matter [ECF No. 41], the FEC alleged that Rivera secretly provided more than $55,000 of in-kind contributions to the 2012 primary election campaign of Justin Lamar Sternad in Florida's 26th Congressional District, in violation of FECA's prohibition on contributions in the name of another. Rivera directed an associate, Ana Sol Alliegro, to approach Sternad with the offer to help fund his campaign, to which Sternad agreed. Rivera then delivered cash to vendors providing services to the

committee or arranged for cash he controlled to be delivered to vendors providing services to the campaign. Rivera concealed these in-kind contributions by paying vendors in cash to produce and distribute materials for Sternad's campaign. Sternad's disclosure reports failed to disclose the true source of the contributions, instead falsely stating that the contributions were loans from Sternad's personal funds. Rivera took measures to conceal his involvement and the source of the contributions.

In April 2013, the FEC notified Rivera that it had received information indicating that he may have violated the FECA. [*See* ECF No. 41, ¶ 26]. On September 10, 2013, the FEC voted 5-0 to find reason to believe that Rivera had knowingly and willfully violated 52 U.S.C. § 30122. *Id.* at ¶ 27. It then initiated an investigation, which included the completion of Reports of Investigation ("ROIs") by FEC attorneys and investigators.

The ROIs contain summaries of witness interviews. [*See* ECF No. 117-1, ¶ 5]. The two at issue here are, in fact, summaries of interviews.

It is standard practice for investigators to consult with an attorney assigned to the case in advance of interviews the investigators conduct. *Id.* This consultation begins with the selection of the individual witnesses to interview, and continues with the topics to cover, including some of the necessary questions to ask. After the conclusion of an interview by an investigator, an additional discussion with the attorney ordinarily takes place. During those additional discussions, the FEC attorney assists in

summarizing and evaluating the material for inclusion in the ROI, including whether a follow-up interview is necessary. *Id.*

According to Ms. Stevenson's declaration, the ROIs are privileged and as a matter of policy are not generally released to the witness or to the public. *Id.* at ¶ 6. The FEC releases various *other* documents that are integral to its resolution at the conclusion of a matter, **but not ROIs**. *Id.*; *see also* Statement of Policy Regarding Disclosure of Certain Documents in Enforcement Matters, 81 Fed. Reg. 5073 (Aug. 2, 2016).

For the ROIs at issue, FEC Investigator Anne Spivey prepared for the interviews and the drafting of ROIs consistent with these ordinary practices. [ECF No. 117-1, ¶ 8]. Her interviews included two of the vendors who Rivera paid for services they provided to the Sternad campaign, John Borrero and Hugh Cochran, both on March 8, 2017. *Id.*

Before the interviews, Ms. Spivey consulted with an attorney about topics to cover and questions to ask. *Id.* An FEC attorney assisted in evaluating which material would be included in the report for each interview and in how to summarize the material. *Id.*

The ROIs were completed on the same day as each interview. *Id.* Both interviews were then referenced in the General Counsel's Brief that advises the FEC Commissioners about the legal and factual issues in the case, including whether there is probable cause to believe that violations occurred. *Id.*; *see also* 52 U.S.C. ¶ 30109(a)(3).

The ROIs were made available for consideration by Commissioners as they voted on whether there was probable cause to believe violations occurred and whether to institute this civil action. [ECF No. 117-1, ¶ 8]. The Commission unanimously concluded that there was probable cause to believe that Rivera knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b). [ECF No. 41, ¶ 30].

In his request for production of documents, Rivera sought documents responsive to 37 distinct categories. In response, in three sets of rolling productions to Rivera on August 9, 2019, September 6, 2019, and September 20, 2019, the FEC produced approximately 1,300 pages of documents, including more than 100 pages of records from the FEC's administrative process.

The FEC also provided a privilege log with its September 6th production. The log noted the withholding of the ROIs of Borrero (two pages) and Cochran (one page). At the same time, the FEC produced seven pages of attachments to the Cochran ROI, including a typed statement prepared by Cochran, a copy of an email from Cochran to Rivera, and a data file that Cochran had provided to the FEC. *See* FEC1193-1199. The FEC also produced an April 14, 2017 declaration signed by Cochran. FEC0395. Rivera subsequently took Borrero's deposition.

On May 12, 2020, the Undersigned held a discovery hearing about Rivera's efforts to obtain the two ROIs and later issued a post-hearing Order requiring memoranda on designated issues. [ECF Nos. 112; 113]. Specifically, the Order directed the parties to

address the following issues: (1) whether the law enforcement investigatory privilege applies to the FEC; (2) whether other courts have ruled on the FEC's assertions of the law enforcement investigatory privilege; (3) whether there is any type of distinction in the law between a *plaintiff* asserting a work product protection claim and a defendant asserting a work product protection claim; (4) whether a plaintiff is able to successfully assert a work product protection claim when the documents at issue are part of an assessment of whether to file a lawsuit; (5) what significance, if any, should attach to the fact that the statute of limitations for both a criminal prosecution and a civil lawsuit have now expired; (6) and any other issues concerning the FEC's assertion of the law enforcement investigatory privilege and the work product doctrine over the two reports.[1] [ECF No. 113].

## II.     Applicable Legal Principles and Analysis

### A.     Work Product

Work product constitutes: (1) any document that is (2) prepared in anticipation of litigation, including administrative proceedings, (3) by or for a party, or by or for that party's representative. *See* Fed. R. Civ. P. 26(b)(3). The Supreme Court has articulated that

---

[1]     The Undersigned instructed the parties to discuss topics 3, 4 and 5 because Rivera took the position that (1) there is a legal distinction between a plaintiff-asserted work product claim and one lodged by a defendant, (2) a work product assertion is unavailable or of diminished capacity when it concerns a document discussing the issue of *whether* to file a lawsuit, and (3) the law enforcement privilege cannot succeed after expiration of the statute of limitations for criminal charges.

the purpose of work product protection is to immunize the work product of the attorney or his agents from discovery, so that they can analyze and prepare their client's case for litigation. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *see also Upjohn Co. v. United States*, 449 U.S. 383, 397-98 (1981); *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947).

The work product privilege protects the materials of both plaintiffs and defendants. The doctrine applies equally to documents withheld by either type of party, in open or closed matters. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 619 (S.D. Fla. 2013) (internal citation omitted) (emphasis added) ("The work-product doctrine protects materials if they were prepared for any litigation (even litigation which has terminated) as long as such materials were prepared *for a party to the litigation* in which the protection is being asserted."). Indeed, Rule 26 makes no distinction between which party can assert the doctrine. *See* Fed. R. Civ. P. 26(b)(3) (using the terms "party" or "party's representative" in outlining the doctrine).

Rivera has not submitted any materials to support his stated view that work product protects only defense materials but somehow does not encompass materials prepared by a *plaintiff* when analyzing whether to file a lawsuit. He has apparently dropped that argument, as his post-hearing memorandum [ECF No. 419] makes no mention of it.

The two ROIs at issue here were surely prepared in anticipation of the litigation which the FEC filed against Rivera.

FEC's enforcement process is a statutorily mandated administrative process that expressly includes paths to litigation by or against the Commission. *See* 52 U.S.C. § 30109. The Act expressly authorizes the Commission to conduct an investigation, exercise its enforcement authority and file suit against a respondent to civilly enforce the Act in the event informal conciliation efforts fail. *Id.* at (a)(6)(A).

Memoranda or summaries of witness interviews prepared by an investigator are work product. *See Nobles*, 422 U.S. at 239; *Hickman*, 329 U.S. at 509-10; *Upjohn*, 449 U.S. at 400; *see also Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421-22 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1466 (11th Cir. 1984) (finding that there is "no question" that the witness statements and notes of interviews with witnesses constitute work product); *see generally Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 644 (S.D. Fla. 2011) ("[A] witness statement taken by a party's attorney or agent in anticipation of litigation is protected work product.").[2]

---

[2] Rivera argues that "documents which consist solely of witness statements as part of an investigation prior to litigation should not be precluded from discovery by the opposing party." [ECF No. 119, p. 5]. He cites only one authority in support: *Lewis v. Ameriprise Ins. Co.*, No. 16-00111, 2017 WL 890101, at *3 (S.D. Ala. March 6, 2017). But that case is easily distinguishable and is not persuasive.

That case concerns an **insurance claim file**, which is substantively different than materials in other types of civil lawsuits because "insurance claim files generally do not constitute work product at early stages of investigation, when the insurance company is primarily concerned with 'deciding whether to resist the claim, to reimburse the insured and seek subrogation . . . or to reimburse the insured and forget about the claim

8

Significantly, the ROIs at issue here are not verbatim accounts of the interviews provided by the witnesses, nor are they statements prepared by the witnesses, signed by the witnesses or approved by the witnesses. Rather, they are **summaries** prepared by the investigator, with the help of FEC counsel. In other words, these reports are the highlights of what an investigator and an attorney thought to be the important portions of the interview. But even a verbatim transcript of an interview taken by an attorney or an attorney's agent is likely still protected by the work product doctrine when the interview was conducted in anticipation of litigation. *See, e.g., Gargao v. Metro-North*, 222 F.R.D. 38, 39 (D. Conn. 2004) (finding that transcripts of audiotaped statements of employees taken by a claims agent were protected work product material); *cf. Cohen v. Gulfstream Training Academy, Inc.*, 249 F.R.D. 385, 386 (S.D. Fla. 2008) (holding that witness's notes prepared at counsel's direction subject to work product protection).

In the instant case, Investigator Spivey prepared for her interviews and for the drafting of both ROIs at the direction of, and in consultation with, FEC attorneys and in anticipation of a possible offensive enforcement lawsuit to be brought by the Commission. [ECF No. 117-1, ¶ 8]. **The topics to cover, the questions to ask, which**

---

thereafter.'" *Id.* In other words, insurance claims files typically involve a far-different work product analysis. Courts in our district regularly recognize this distinction. *See Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691 (S.D. Fla. 2007) (adopting rebuttable presumption that documents prepared before the final decision on an insured's claim are not work product). The Undersigned follows this rebuttable presumption for insurance carrier's work product assertions. *See, e.g., Gables Condo and Club Assoc. v. Empire Indemnity Ins. Co.*, No. 18-23659, 2019 WL 1317824 (S.D. Fla. Mar. 22, 2019).

**material should be summarized, and how to summarize it were all matters developed as part of that attorney consultation.** *Id.*

Therefore, the facts included in the ROIs reflect an assessment of topics and questions asked that *attorneys* believed were pertinent to the Commission's investigation and possible litigation. *Id.* The ROIs were integral to the development of recommendations made to the FEC about whether to advance the underlying matter closer to litigation. *Id.* The ROIs were available to Commissioners as they voted on whether to advance the matter towards litigation. *Id.*

Because the FEC's administrative enforcement matter involving Rivera contemplated and in fact has led to this litigation, the ROIs were prepared in anticipation of litigation. *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 11 (D.D.C. 2000) (explaining that a "prosecution memoranda . . . created as an integral part of the [agency's] investigation and its decision-making process with regard to whether or not to prosecute . . . is precisely the type of information universally held to be attorney work-product").

Given the close involvement of FEC counsel in the preparation of the ROIs,[3] the work product doctrine is easily established. *United States v. All Assets Held at Bank Julius*

---

[3] Rivera contends that he "does not seek any document which contains an attorney's opinion, mental impression, conclusions and/or legal theories." [ECF No. 119, p. 5]. He also argues that "the investigative reports sought by the defendant contain merely the summaries of interviews conducted by the FEC investigators without any attorney notes or impressions contained therein." *Id.* But this argument is fundamentally at odds with

10

*Baer & Co., Ltd.*, 169 F. Supp. 3d 54, 59 (D.D.C. 2015) (determining that work product privilege protected a report prepared by an Internal Revenue Service agent to help government attorneys decide **whether and what charges to pursue**), *aff'd sub nom., United States v. All Assets Held at Bank Julius*, No. 1:04-CV-00798, 2016 WL 11609892 (D.D.C. Jan. 12, 2016); *Feshbach v. Sec. & Exch. Comm'n*, 5 F. Supp. 2d 774, 782-83 (N.D. Cal. 1997) (finding that work product privilege applied to documents relating to a Securities and Exchange Commission investigation into a broker-dealer business).

The Undersigned rejects Rivera's suggestion[4] that the work product doctrine is somehow unavailable because the statute of limitations for both civil and criminal actions has now expired. *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 656 (S.D. Fla. 2009) (citing *In Re Grand Jury Subpoenas*, *89-3 and 89-4, John Doe 89-129*, 902 F.2d 244 (4th Cir.1990)) (finding that the fact that party "arguably cannot now be named as a defendant in this litigation because the statute of limitations has elapsed does not lift the work product protection veil from the [incident report]").

Rivera has not asserted that any exceptions to the work product doctrine apply. His memorandum does not even mention that fact work product (as opposed to attorney

---

the declaration of the FEC's Acting General Counsel, who unequivocally represented that an FEC attorney *was* closely involved in preparing the ROIs with the investigator. Rivera has not submitted any evidence, let alone argument, to suggest that the declaration is false, misleading, incomplete, or otherwise inaccurate.

[4] Rivera made this argument at the hearing, but he seems to have withdrawn it. He does not assert it in his memorandum.

work product) is subject to discovery "upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *See* Fed. R. Civ. P. 26(b)(3). Instead, he merely challenges the availability of the doctrine in the first place, arguing that the FEC has not met its burden. Because the Undersigned concludes that the FEC has met its burden of establishing that the two ROIs are covered by the work product doctrine, no further analysis is needed.

Nevertheless, in an abundance of caution, the Undersigned will also address the FEC's claim of law enforcement privilege (in case Rivera appeals this ruling and seeks a different result from United States District Judge Marcia G. Cooke and Judge Cooke were to agree with him).

### B. Law Enforcement Investigatory Privilege

The qualified law enforcement investigatory privilege protects from disclosure files and reports of criminal *and* civil law enforcement investigations. *See, e.g.*, *United States v. Van Horn*, 789 F.2d 1492, 1507 (11th Cir. 1986) (applying privilege to the nature and location of electronic surveillance equipment); *JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts, and Quartz Crystals*, 297 F.R.D. 522, 529 (S.D. Fla. 2013); *accord In re The City of New York*, 607 F.3d 923 (2d Cir. 2010) (granting petition for a writ of mandamus and vacating order requiring disclosure of undercover police reports in civil rights lawsuit filed by protestors arrested during a political convention);

*Application of Eisenberg*, 654 F.2d 1107 (5th Cir. 1981) (affirming order concluding that a petitioner's civil discovery request was a disguised attempt to obtain criminal discovery otherwise unavailable to him)[5]; *Black v. Sheraton Corp. of Am.*, 564 F.2d 531 (D.C. Cir. 1977) (vacating judgment in civil lawsuit because trial court should have conducted an *in camera* review of documents the Government claimed were privileged); *see generally In re U.S. Dep't of Homeland Security*, 459 F.3d 565, 569-70 (5th Cir. 2006) (holding district court erred in refusing to recognize law enforcement privilege -- which protects "investigative files in an ongoing criminal investigation" and which extends "beyond that allowed for identities of confidential informants" -- when determining whether the government would have to disclose documents which arguably were part of ongoing investigations).

The purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to **protect witnesses** and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, **and otherwise prevent interference** in an investigation." *JTR Enterprises*, 297 F.R.D. at 529 (internal quotation marks and citation omitted) (emphasis added); *White v. City of Fort Lauderdale*, No. 08-60771-CIV, 2009 WL 1298353, at

---

[5]   The former Fifth Circuit Court of Appeals issued *Eisenberg* on **September 4,** 1981. In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit opinions existing as of **September 30**, 1981 would be binding precedent on all federal courts within the Eleventh Circuit.

*3 (S.D. Fla. May 8, 2009) (recognizing that the law enforcement privilege is applicable to "protect investigatory files" from disclosure).

The qualified law enforcement investigatory privilege applies to the FEC, an investigatory agency. *See United States v. Lundergan*, No. 5:18-cr-00106-GFVT, 2019 WL 4065604, at *3 (E.D. Ky. Aug. 28, 2019) (explaining that "the FEC is the administrative agency tasked with enforcing the Federal Election Campaign Act" and "because the FEC is the enforcement agency [certain documents are] subject to the law enforcement privilege").

The privilege has periodically been invoked in civil litigation when parties have sought internal FEC enforcement materials like the ROIs at issue here, and courts have found that it applies. *Id.* (holding that an FEC manual "is precisely the type of document intended to be shielded by the law-enforcement privilege"); *Beam v. Mukasey*, No. 07-1227, ECF No. 141 (N.D. Ill. July 7, 2009) ("sustain[ing] the FEC's 'attorney work product' and 'law enforcement privilege' objection to production of the documents" in civil lawsuit).

In determining whether the qualified law enforcement privilege protects against disclosure or whether it must give way, courts weigh the following ten factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any actual criminal proceeding either pending or reasonably likely to

14

follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the [litigant's] case.

*Kahn v. United States*, No. 13-24366-CV, 2015 WL 3644628, at *2 (S.D. Fla. June 10, 2015) (quoting *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)); *accord In re United States Dep't of Homeland Security*, 459 F.3d at 571; *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996).

These factors weigh (but only slightly) in favor of sustaining the FEC's law enforcement privilege claim in this civil enforcement action.[6] There are no concerns about the privacy of the two individuals. Rivera has already taken the deposition of one and is in possession of documents concerning the other.

Many of the concerns typically underlying law enforcement privilege claims are inapplicable here. There is no confidential informant whose identity must be protected. There are no confidential law enforcement strategies which would be revealed if Rivera had access to the ROIs. The "technique" involved here -- interviewing fact witnesses and writing a report summarizing what the witness said -- is hardly confidential (and is not

---

[6] The parties have not called my attention to any legal authority which establishes rules or suggests guidelines on how to evaluate the ten factors, whether any factor or factors is more important than others or how many factors must lean one way in order to support a decision.

15

unique to law enforcement, in any event). This is a civil enforcement proceeding, not a criminal investigation or prosecution, and the investigation has been completed.

On the other hand, disclosure of ROIs would reveal the *judgments* made by investigators and FEC lawyers about which questions to ask and which witness statements merited inclusion in the ROIs in this ongoing matter. [ECF No. 117-1, ¶ 8]. In addition, disclosure would also discourage future witnesses from providing full and candid statements during FEC investigations. *Id.* Further, court-ordered disclosure of ROIs will chill FEC attorneys and investigators from creating witness interview summaries in future matters. *Id.*

According to the FEC, if ROIs were ordered disclosed in the course of litigation following the administrative matter in which it had been created, as has been sought in this case, then attorneys and investigators will be required to record and summarize interviews as if prepared for final presentation to a court, rather than as an internal working file. *Id.* Likewise, the FEC contends that attorneys and investigators would also be chilled from discussing in ROIs confidential investigative techniques that the FEC employs. *Id.* Moreover, as explained above, the information Rivera seeks is **directly available from the witnesses themselves**.[7]

---

[7] Rivera has already taken Mr. Borrero's deposition and had the opportunity to question him on his recollection of the facts. Furthermore, Rivera has the typed statement of Hugh Cochran that Cochran provided contemporaneous to the investigator preparing the ROI, and an affidavit Cochran signed during the administrative process in 2017. And he has not explained why he could not take Cochran's deposition.

16

Generally, courts "balance the interests of the litigant seeking the information against the government's interest in nondisclosure." *Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980); *see also Van Horn*, 789 F.2d at 1508 ("The privilege will give way if the defendant can show need for the information."); *JTR Enterprises*, 297 F.R.D. at 529 (explaining that courts "balance the government's interest in confidentiality against the litigant's need for information").

Courts have concluded that "'there ought to be a pretty strong presumption **against** lifting that privilege.'" *F.T.C. v. Timeshare Mega Media & Mktg. Grp., Inc.*, No. 10-62000-CIV, 2011 WL 6102676, at *5 (S.D. Fla. Dec. 7, 2011) (emphasis added) (quoting *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997)); *In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 688 (N.D. Ga. 1998) (same). Here, since **both** of these witnesses are available to Rivera, there is no need for production of the investigative summaries authored by the FEC.

Rivera's failure to show a need for these summaries is, for all practical purposes, fatal to his request because "[m]ere conjecture about the possible relevance" is insufficient to compel disclosure. *See United States v. Gutierrez*, 931 F.2d 1482, 1491 (11th Cir. 1991). It is this factor which the Undersigned deems most significant when evaluating Rivera's argument that the law enforcement investigatory privilege should not be upheld here.

Finally, Rivera's statute of limitations argument is unconvincing. The instant lawsuit is an ongoing enforcement action by the FEC, and the privilege extends to open

17

*and* closed investigations. *See, e.g.*, *United States v. Bennett*, No. 6:16-CR-256-Orl-41TBS, 2017 WL 11491960, at *2 (M.D. Fla. Oct. 30, 2017) ("'An investigation,' however, 'need not be ongoing for the law enforcement privilege to apply. . . .'") (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d at 484).[8]

### III. Conclusion

The FEC has met its burden to demonstrate that the two ROIs are work product protected. It has also, although barely, established that the limited law enforcement investigatory privilege applies. Given that the work product doctrine clearly applies, the fuzzy and less-than-completely-solid basis of the law enforcement privilege here is not problematic and does not jeopardize the final conclusion (i.e., that the FEC need not produce the two reports to Rivera).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 8, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record

---

[8]  The *Bennett* Court held that an investigation need not be ongoing for the law enforcement privilege to apply as "the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." *Id.* (quoting *City of New York*, 856 F.2d at 484).