**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 17-CV-22643 COOKE/GOODMAN

FEDERAL ELECTION COMMISSION,

                                    Plaintiff,

vs.

DAVID RIVERA,

                                    Defendant.

_____

### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, Defendant, DAVID RIVERA respectfully moves this Court to dismiss this case with prejudice for lack of subject matter jurisdiction and states:

### LEGAL STANDARD APPLICABLE TO RULE 12(B)(1) MOTIONS

"Federal courts have limited subject-matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving it exists." *Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F.Supp.3d 1300, 1302 (S.D. Fla. 2016) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam)).  A party, or a court on its own initiative, can challenge whether the court has subject matter jurisdiction, *at any time*, under Fed.R.Civ.P. 12(b)(1). *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Further, "Rule 12(h)(3) instructs: '[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" *Id.* (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). A different standard of review applies to Rule 12(b)(1) motions depending on whether the challenge is facial or factual.  As the Eleventh Circuit explained in *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008):

> A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.

Id. (internal citations and quotations omitted).

## **SUMMARY**

This Court lacks subject jurisdiction in this case for two reasons. First, the statute of limitations applicable to this case, 28 U.S.C. § 2462, is jurisdictional and mandates that a court must refrain from entertaining a claim ". . . unless commenced within five years from the date when the claim first occurred." 28 U.S.C. § 2462 (hereinafter "§ 2462").  The claim in this case first occurred *no later than July 10, 2012*, but the Federal Elections Commission ("FEC") did not commence this action *until* July 14, 2017, which was more than five years beyond the first occurrence date and thus, beyond the statute of limitations.

Second, the Federal Election Campaign Act ("FECA") requires the FEC to give a respondent, at various times during its pre-suit investigation, notice of the alleged violation, an "opportunity to respond," and "shall," after making a determination of probable cause, ". . . attempt, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved."  52 U.S.C. § 30109(a)(4)(A)(i).  The FEC may not commence litigation unless it is unable to ". . . to correct or prevent any violation of this Act. . ." through the noted dispute resolution methods. Id.  Thus, FECA's pre-suit obligations are jurisdictional.  Here, the FEC failed to perform those jurisdictional, pre-suit obligations, which thus bar this Court from entertaining its claim.

**LEGAL ARGUMENT**

**A. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE STATUTE OF LIMITATIONS IS JURISDICTIONAL AND EXPIRED PRIOR TO COMMENCEMENT OF THIS ACTION**

The statute of limitations applicable to this case is the five-year limitations period in §2462. See Fed. Election Comm'n v. Nat'l Republican Senatorial Comm., 877 F. Supp. 15, 19 (D.D.C. 1995) ("In sum, we apply to the FEC in this case the same statute of limitations which applies 'to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise.'").  28 U.S.C. § 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, ***shall not be entertained*** unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

Id. (emphasis added).

This statute is jurisdictional. See S.E.C. v. Graham, 21 F. Supp. 3d 1300, 1308 (S.D. Fla. 2014), aff'd in part, rev'd in part and remanded sub nom. Sec. & Exch. Comm'n v. Graham, 823 F.3d 1357 (11th Cir. 2016). In Graham, Judge James Lawrence King found the statute jurisdictional because it commands that untimely claims "shall not be entertained," which Judge King viewed as an unequivocal restriction on a Court's exercise of jurisdiction over expired claims. Id.  The SEC appealed Judge King's ruling but the Eleventh Circuit declined to address the jurisdictional issue. See Graham, 823 F.3d at 1360, n.1.  The Eleventh Circuit, however, found the statute inapplicable to the SEC's request for an injunction but applicable to the SEC's request for declaratory relief and civil penalties.[1]  Thus, Judge King's opinion remains valid and, as applied,

---

[1] The FEC did not dispute the statute's applicability to its civil penalty claim.

precludes a court from exercising jurisdiction over an expired claim for civil penalties and declaratory relief.[2]

Moreover, a claim is barred under § 2462 if suit is not brought within five years of the date the claim first accrues. Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth., 502 F.3d 1316, 1322 (11th Cir. 2007). "A claim first accrues on the date that a violation first occurs." Id. (citing 3M Co. (Minn. Mining & Mfg.) v. Browner, 17 F.3d 1453, 1462 (D.C.Cir. 1994). The U.S. Supreme Court found likewise in Gabelli v. S.E.C., 568 U.S. 442, 448 (2013): "'In common parlance a right accrues when it comes into existence....'" Thus the 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.'" Gabelli, 568 U.S. at 448 (internal citations omitted); See also 3M Co. (Minnesota Min. & Mfg.), 17 F.3d at 1460 ("A claim normally accrues when the factual and legal prerequisites for filing suit are in place.).

Likewise, under § 2462, a series of separate acts is a single violation that accrues upon occurrence of the first act when the conduct can collectively be considered a single course of conduct:

> A single violation continues over an extended period of time 'when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act,' as opposed to 'conduct that is a discrete unlawful act.' In other words, one violation continues when 'the conduct as a whole can be considered as a single course of conduct.'
> ….
> And a continuing violation is actionable even before the last act of the violation where the conduct that has already occurred is sufficient to support a claim.
> …
> In contrast, the clock under § 2462 begins only once, when a claim *first* accrues.

---

[2] The Middle District of Florida, in United States v. Hines, 2017 WL 6536574, at *2 (M.D. Fla. Dec. 21, 2017), declined to follow Judge King's jurisdictional ruling, finding that 28 U.S.C. § 2462 is non-jurisdictional. The conflict between the two district court opinions remains outstanding. Notably, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 563 U.S. 692, 709 (2011).  Thus, both the Hines and Graham decisions appear to be of equal, persuasive, non-binding authority in the Eleventh Circuit.

> If the limitations period under § 2462 reset each day, the statutory term 'first' would have no operative force. In other words, the statute could just as easily state that the limitations period begins whenever 'the claim accrues.'

Sierra Club v. Oklahoma Gas & Elec. Co., 816 F.3d 666, 672-73 (10th Cir. 2016) (emphasis in original) (internal citations omitted).[3]  As applied to an FEC civil penalty action, the FEC must file a civil action within five years of the first occurrence of its claim. See Fed. Election Comm'n v. Nat'l Republican Senatorial Comm., 877 F. Supp. 15, 18–19 (D.D.C. 1995).

Here, the FEC's Amended Complaint (hereinafter "*Am.Compl.*") was filed on January 15, 2019, which this Court assigned a Rule 15(c)(1)(B) "relation back" filing date of July 14, 2017, the filing date of the FEC's original complaint. See Ex. 1, *Trans. of Hearing on Apr. 16, 2019* (D.E. 49), pp. 33-34.  Thus, the operative filing date of the *Am.Compl.* is **July 14, 2017**, five years to the day of the earliest contribution alleged against Rivera in the *Am.Compl.* See Ex. 2, *Am. Compl.*, at ¶ 13. The *Am.Compl.* alleges that Rivera, as part of a single scheme to make contributions in the name of another, made a total of five (5) illegal contributions to Justin Sternad

---

[3] Repeated wrongs are distinguishable from continuing conduct. Repeated, distinct wrongs accrue separately from other violations and each is subject to its own statute of limitations analysis. Sierra Club v. Oklahoma Gas & Elec. Co., 816 F.3d 666, 672 n.5 (10th Cir. 2016); See also Sec. & Exch. Comm'n v. Kokesh, 884 F.3d 979, 980 (10th Cir. 2018). Here, Rivera's alleged conduct was charged as a single "scheme" comprised of contributions that Justin Sternad failed to disclose on his FEC 3 disclosure reports. That is, Sternad falsely claimed that the contributions were personal loans to his campaign rather than disclose their true source. The contributions in conjunction with their non-disclosure comprised the alleged wrong: making contributions in the name of another. Therefore, the contributions attributed to Rivera were not stand-alone wrongful acts. What caused them to be contributions in the name of another, according to the *Am.Compl.*, was their continued exclusion by Sternad from his FEC 3 disclosure reports, conduct that is more in the nature of a continuing breach of duty than repeated, distinct violations because the wrong did not require a plurality of contributions. One undisclosed contribution sufficed as additional, unreported contributions merely affected the size of the potential civil penalty. Thus, continued concealment in derogation of a continuing duty of disclosure was the true operative conduct in this case, conduct which cannot be parsed into discreet, single episodes of conduct for statute of limitations purposes. See Sierra Club v. Oklahoma Gas & Elec. Co., 816 F.3d 666, 671-673 (10th Cir. 2016) (under § 2462, continuing conduct in derogation of a continuing duty to act was a single offense that accrued  upon commission of the first breach).

("Sternad") and his campaign between the approximate dates of July 14, 2012 and August 8, 2012. Id.  Further, it charged these five contributions as a **single offense**. Id. at ¶¶ 34, 35. Thus, for the FEC to be within the applicable statute of limitations, the first occurrence of the alleged claim against Rivera, making contributions in the name of another, had to be on or after July 14, 2012, which it was not. Indeed, the FEC's own documents establish that the FEC's claim in this case accrued before that date.

First, the FEC's April 26, 2013 letter to Mr. Rivera, referenced in paragraph 26 of the *Am.Compl.*, notified Rivera of the FEC's receipt of information about his involvement in possible FECA violations. See Ex. 3, *FEC's Ltr to Rivera (Apr. 26, 2013)*.  That document, produced by the FEC in discovery, included an attachment, the factual basis supporting Sternad's guilty plea in his criminal case, which stated, in relevant part, that Sternad had received contributions on May 25, 2012 ($300.00), June 7, 2012 ($5,000.00); June 8, 2012 ($5,500.00), which Sternad falsely reported as personal loans to his campaign in his July 10, 2012 FEC 3 disclosure report. Id. at p. 5 of Factual Basis; See also Ex. 15, *Sternad's July 10, 2012 Quarterly FEC 3 Report,* at p. 3.[4]

Second, the FEC's September 11, 2013 letter to Mr. Rivera referenced at paragraph 27 of the *Am.Compl.*, alerted him that the FEC had found reason to believe that he had violated FECA. See Ex. 4, *FEC's Ltr to Rivera (Sept. 11, 2013),* at Bates No. FEC 00256. This letter included an FEC brief entitled, "Factual and Legal Analysis," which alleged the following contributions:

---

[4] The Court took judicial notice of the factual basis supporting Sternad's guilty plea in its February 23, 2021 Summary Judgment Order (D.E. 163, at p. 20, and n.4). The Court treated the factual allegations in this document as admissions by Justin Sternad, which the Court weighed as evidence against Mr. Rivera. Therefore, notwithstanding the FEC's attempt to exclude the May and June 2012 contributions from this case, the Court, on its own accord, treated them to be within the FEC's claim against Mr. Rivera.

| Approximate Date (all in 2012) | Contribution Amount | Form of Payment | Contribution Type | Means and Purpose |
|---|---|---|---|---|
| May 25 | $500 | Currency | Direct | Co-conspirator hand-delivered to Sternad and $300 of the amount was later deposited into the Sternad Committee account |
| June 7 | $5,000 | Currency | Direct | Deposited into Sternad Committee account |
| June 8 | $5,500 | Currency | Direct | Co-conspirator deposited into Sternad Committee account; June 7 and 8 contributions, totaling $10,500, apparently covered the cost of the filing fee, because on June 8, a check in the amount of $10,440, drawn on the Sternad Committee account, was sent to the Florida Division of Elections with the notation "Qualifying Fee 2012" |
| July 2 | $1,060 | Currency | Direct | Deposited into Sternad's personal account; Apparently covered the cost of a rental car, because on that same date, Sternad rented a car to use for campaigning. |
| July 14-15 | $2,600 | Currency | In-Kind | Co-conspirator hand-delivered to graphic designer to develop Sternad campaign flyers |
| July 23 | $10,000 | Currency | In-Kind | Co-conspirator hand-delivered to Inkpressions, Inc., d/b/a Expert Printing & Graphics ("Expert Printing"), for printing services related to Sternad campaign flyers |
| July 17-24 | $15,901.35 | Currency | In-Kind | Delivered to Rapid Mail & Computer Service, Inc. ("Rapid Mail") for mailing services related to Sternad campaign flyers |
| August 2 | $5,000 | Currency | In-Kind | Co-conspirator provided to Expert Printing for printing services related to Sternad campaign flyers |
| August 2-8 | $22,100 | Currency | In-Kind | Delivered to Rapid Mail for mailing services related to Sternad campaign flyers |
| August 9 | $13,824.85 | Check (payable to Expert Printing) | In-Kind | Co-conspirator hand-delivered to Expert Printing; On same date, at the request of a co-conspirator, Expert Printing issued a check for $9,000 to Rapid Mail, and that check then was delivered to Rapid Mail; These payments apparently covered the vendors' performance of printing and mailing services related to Sternad campaign flyers |
| **Total** | **$81,486.20** | | | |

The Factual and Legal Analysis brief characterized these contributions as a "scheme" involving Rivera by which the contributions, including those in May and June 2012, were alleged to have been falsely made in Sternad's name by reason of Sternad's falsely reporting them to the FEC as personal loans to his campaign. Ex. 4., at Bates No. FEC 00235-000236.

A similar chart appeared in the FEC's April 28, 2017 letter to Mr. Rivera, referenced at paragraph 29 of the *Am.Compl.*, notifying him that FEC's general counsel was prepared to

recommend that the FEC find probable cause against him regarding the following contributions:[5]

| Approximate Date | Contribution Amount | Form of Payment | Contribution Type |
|---|---|---|---|
| May 25, 2012 | $500 | Currency | Direct |
| June 7, 2012 | $5,000 | Currency | Direct |
| June 8, 2012 | $5,500 | Currency | Direct |
| July 2, 2012 | $1,060 | Currency | Direct |
| July 14-15, 2012 | $2,600 | Currency | In-Kind |
| July 23, 2012 | $10,000 | Currency | In-Kind |
| July 17-24, 2012 | $15,901.35 | Currency | In-Kind |
| August 2, 2012 | $5,000 | Currency | In-Kind |
| August 2-8, 2012 | $22,100 | Currency | In-Kind |
| August 9, 2012 | $13,824.85 | Check (payable to Expert Printing) | In-Kind |
| **Total** | **$81,486.20** | | |

See Ex. 5, *FEC's Ltr to Rivera with attached General Counsel's Brief (April 28, 2017)*, at Bates No. FEC 00322.  The General Counsel's brief characterized these contributions as "Rivera's scheme," accusing him of acting ". . . in a knowing and willful manner when he orchestrated and executed this illegal contribution scheme." Id. at Bates No. FEC 00322, 00329. As in the FEC's earlier correspondence to Rivera, the General Counsel's Brief alleged that the referenced contributions were falsely made in Sternad's name because Sternad, as part of the scheme, falsely reported them to the FEC as personal loans to his campaign, including in Sternad's July 2012 Quarterly Report. Id. at Bates No. FEC 00318, 000320, n.6.[6]

On July 11, 2017, the FEC voted to authorize its General Counsel to file a civil suit against Mr. Rivera. See Ex. 7, *Certificate of FEC's Vote (July 11, 2017)*.  As well- documented above, in the five years preceding the filing of its original complaint in this case, the FEC steadfastly accused

---

[5] Rivera disputes receipt of this document. See *infra,* at p. 18-19; Ex. 11, *Declaration of David Rivera.* The copy attached as Exhibit 5 was produced by the FEC in discovery.

[6] Nearly identical allegations and contribution chart appeared in the FEC's letter to Rivera, dated June 2, 2017. See Ex. 6, *FEC's June 2, 2017 Ltr to Rivera with enclosed proposed Conciliation Agreement*.  The proposed Conciliation Agreement required Rivera to admit that he schemed with Sternad for Sternad to accept in his own name the May through August 2012 contributions, $81,486.20 in total, by falsely reporting them to the FEC as his own. Id. at FEC Bates No. 00880, ¶ 4. Rivera never received this proposed agreement prior to obtaining it in discovery in this case. See Ex. 11, *Declaration of David Rivera.*

Mr. Rivera of scheming with Sternad for Sternad to accept in his own name the May through August 2012 contributions, $81,486.20 in total, by falsely reporting them to the FEC as personal loans. This included the contributions in May and June 2012, which the FEC excluded from its first and amended complaints.  The earliest alleged contribution in the original Complaint is July 14-15, 2012. See Ex. 8, *Complaint (D.E. 1) filed July 14, 2017*, at  ¶ 13.  The same holds true for the *Am.Compl*. See Ex. 2, *Am. Compl. (D.E. 41)*, at ¶ 13.

It is no coincidence that the contributions between May and June 2012 ***vanished*** from the FEC's two complaints as their inclusion would have raised an obvious statute of limitations "red flag."  The omission glaringly suggests a concerted effort by the FEC to suppress its awareness that the statute of limitations had expired before this suit commenced. As noted at footnote 3, *supra*, the thread tying these contributions into a single violation was their exclusion by Sternad from Sternad's FEC 3 disclosure reports, which Sternad alone filed and had the duty to report. Their concealment, according to the *Am.Compl.*, is what caused them to be made in Sternad's name.  The concealment never stopped…it continued for as long as the contributions continued, that is, until Sternad got caught.

As noted in the factual basis of Sternad's guilty plea, Sternad concealed the true source of the May and June 2012 contributions by listing them as personal loans in his July 10, 2012 Quarterly Report. See Ex. 3, *FEC's Ltr to Rivera (April 26, 2013)* and Ex. 15, *Sternad's July 10, 2012 Quarterly FEC 3 Report*, at p. 3.[7]  For that reason, the sole offense charged in this case, making contributions in the name of another, was complete and had accrued for statute of limitation purposes ***no later than*** July 10, 2012, the date when Sternad falsely reported the May

---

[7] As noted in footnote 4, *supra*, the Court, in its Summary Judgment Order (D.E. 163, at p. 21), gave weight to Sternad's mischaracterization of the May and June 2012 contributions in his July 10, 2012 FEC 3 report, treating them as being within the FEC's claim against Mr. Rivera.

and June 2012 contributions in his Quarterly FEC 3 Report as personal loans.[8] Subsequent contributions were not separate offenses but were part of the same alleged scheme, which merely increased the size of an awardable civil penalty. Indeed, this is exactly how the FEC pled its case in its pre-suit correspondence to Rivera, in its proposed Conciliation Agreement and in its two complaints in this case.

The operative filing date in this case is July 14, 2017, which was more than five years after July 10, 2012, the latest date that this case accrued for statute of limitations purposes. Accordingly, this case was filed beyond the statute of limitations, necessitating, under Judge King's decision in Graham, dismissal with prejudice of the FEC's claim for civil penalties and declaratory relief.[9]

## B.  THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE FEC FAILED TO PERFORM MANDATORY PRESUIT DUTIES WHICH PRECLUDED THE FILING OF THIS CASE

The FEC has exclusive jurisdiction over the enforcement of FECA. See Fed. Election Comm'n v. Rivera, 335 F.R.D. 541, 543 (S.D. Fla. 2020); See also, Stockman v. Fed. Election Comm'n, 138 F.3d 144, 152 (5th Cir. 1998).  The FEC's enforcement authority includes the right to commence civil actions under 52 U.S.C. § 30107(a)(6), which is the FEC's exclusive means of enforcing FECA through civil litigation. 52 U.S.C. § 30107(e); See also Stockman v. Fed. Election Comm'n, 138 F.3d 144, 153 (5th Cir. 1998).

---

[8] Sternad signed his July 2012 Quarterly Report on July 10, 2012 and mailed it on July 12. 2012. See Ex. 15, *Sternad's July 10, 2012 Quarterly FEC 3 Report*, at p. 1, and *attached FEC Envelope Replacement Page*. The FEC received the document on July 17, 2012. Id. at *FEC Envelope Replacement Page*. For purposes of calculating the statute of limitations accrual date, it is the date of the wrong, not the date of the FEC's discovery of the wrong that controls.  See 3M Co. v. Browner, 17 F.3d 1453, 1457-61 and n.14 (D.C. Cir. 1994).  Therefore, in this case, the statute of limitations accrued no later than July 10, 2012, the date Sternad signed his false report, as opposed to July 17, 2012, the date the FEC received it.

[9] Should the Court find that the statute of limitations is not jurisdictional and otherwise denies this motion and enters final judgment, Rivera reserves the right to re-raise his statute of limitations argument under Rule 59(e), Federal Rules of Civil Procedure.

However, the FEC's authority to commence civil litigation is *conditional*; it may exercise that authority **only** if it is unable to correct or prevent a violation of FECA through conference, conciliation, and persuasion. 52 U.S.C. § 30109(a)(4)(A)(i); See also Fed. Election Comm'n v. Nat'l Republican Senatorial Comm., 877 F. Supp. 15, 18 (D.D.C. 1995) ("If the FEC finds probable cause to believe that a violation of FECA has occurred, it must attempt to resolve the matter through informal methods before it can bring suit.  Thus, enforcement suits are to be used only after the informal conciliation process fails."); In re Carter-Mondale Reelection Comm., Inc., 642 F.2d 538, 543 (D.C. Cir. 1980) (citing Gabauer v. Woodcock, 594 F.2d 662, 673 (8th Cir. 1979) ("Congress has explicitly expressed its desire to have the FEC engage in methods of conference, conciliation and persuasion before litigation ensues over any federal election laws.")).

The FEC's duty to attempt to conciliate is statutorily mandated:

> Except as provided in clauses (ii) and subparagraph (C), if the Commission determines, by an affirmative vote of 4 of its members, that there is probable cause to believe that any person has committed, or is about to commit, a violation of this Act or of chapter 95 or chapter 96 of Title 26, the Commission *shall attempt, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved.* Such attempt by the Commission to correct or prevent such violation may continue for a period of not more than 90 days. The Commission may not enter into a conciliation agreement under this clause except pursuant to an affirmative vote of 4 of its members. *A conciliation agreement, unless violated, is a complete bar to any further action by the Commission, including the bringing of a civil proceeding under paragraph(6)(A)*

52 U.S.C. § 30109(a)(4)(A)(i) (emphasis added).

To fulfill its obligation to attempt to conciliate, ". . .the FEC is to provide a defendant with 'a fair opportunity to review and respond to the FEC's findings' regarding the activities that comprise the alleged violation.'" Fed. Election Comm'n v. Adams, 558 F. Supp. 2d 982, 989 (C.D. Cal. 2008). "The [FEC] satisfies the statutory requirement to conciliate if the opposing party has

the opportunity to confront all the issues." Id. at 990.  The required notice and "opportunity to respond" that the FEC must give a respondent to fulfill its duty to attempt to conciliate is codified at 52 U.S.C. § 30109(a)(1)-(3). See generally, Fed. Election Comm'n v. Nat'l Rifle Ass'n of Am., 553 F. Supp. 1331, 1332 (D.D.C. 1983).  These duties exist principally at three stages of an FEC investigation: (1) upon receiving information about a potential FECA violation [52 U.S.C. § 30109(a)(1) and 11 C.F.R. § 111.6]; (2) upon commencement of an investigation after finding a reason to believe that a FECA violation has or is about to occur [52 U.S.C. § 30109(a)(2) and 11 C.F.R. § 111.9]; and (3) upon completion of its investigation, after FEC general counsel has decided to request the FEC to find probable  cause that the respondent has or is about to commit a FECA violation [52 U.S.C. § 30109(a)(3) and 11 C.F.R. § 111.16].

The FEC has augmented the notice and response rights in these provisions by promulgating and publishing in the Federal Register the following agency practices and procedures: 1) *Agency Procedure for Notice to Respondents in Non-Complaint Generated Matters*, 70 Fed. Reg. 38617 (Aug. 4, 2009); *Procedural Rules for Probable Cause Hearings,* 72 Fed. Reg. 64919 (Nov. 19, 2007); *Agency Procedure for Disclosure of Documents and Information in the Enforcement Process,* 76 Fed. Reg. 34986 (June 15, 2011); *Agency Procedures Following the Submission of Probable Cause Briefs by the Office of General Counsel*, 76 Fed. Reg. 63570 (Oct. 13, 2011). Collectively, the above statutes, regulations and procedures require the FEC to do the following:

1.  Upon FEC's Receipt of Information of a Potential FECA Violation

The FEC must take no action other than a dismissal until respondent has been notified of the allegations and given 15 days to answer them and explain why no action should be taken against him or her. 52 U.S.C. § 30109(a)(1); 11 C.F.R. § 111.6; *Agency Procedure for Notice to Respondents in Non-Complaint Generated Matters*, 70 Fed. Reg. 38617 (Aug. 4, 2009).

2.  Upon Commencement of an Investigation After Finding A Reason to Believe That a FECA Violation Has or is About to Occur

The FEC must notify the respondent that the FEC has found reason to believe that respondent has committed or is about to commit a FECA violation.  The notice must set forth the factual basis for such violation. 52 U.S.C. § 30109(a)(2); 11 C.F.R. § 111.9.

3.  Upon Completion of the FEC's Investigation, Following FEC General Counsel's Determination to Request the FEC to Find Probable Cause

FEC's general counsel shall notify the respondent of general counsel's recommendation to the FEC to proceed to a vote on probable cause. General counsel shall include a brief stating the general counsel's position on the legal and factual issues of the case. Respondent may within 15 days of receiving general counsel's brief submit his or her own brief stating respondent's position on the legal and factual issues and replying to general counsel's brief.  52 U.S.C. § 30109(a)(3); 11 C.F.R. § 111.16). Additionally, respondent may request a probable cause hearing before the FEC Commissioners, at which respondent or counsel can present respondent's arguments before the Commissioners vote on a determination of probable cause. *Procedural Rules for Probable Cause Hearings,* 72 Fed. Reg. 64919 (Nov. 19, 2007).  Upon receipt of general counsel's brief, respondent may upon request, obtain production of all relevant documents gathered by the Office of General Counsel in its investigation, which are not publicly available and not already in respondent's possession, which general counsel gathered in connection with its investigation. *Agency Procedure for Disclosure of Documents and Information in the Enforcement Process,* 76 Fed. Reg. 34986 (June 15, 2011). Respondent is also entitled to receive a copy of the FEC general counsel's notice to the FEC, following general counsel's receipt and review of respondent's brief and/or after a probable cause hearing, informing whether general counsel intends to proceed or withdraw its recommendation that the FEC find probable cause. *Agency Procedures Following the Submission of Probable Cause Briefs by the Office of General Counsel*, 76 Fed. Reg. 63570 (Oct.

13, 2011). Additionally, if the general counsel's notice to the FEC contains new facts or new legal arguments, not previously contained in general counsel's brief or raised at the probable cause hearing, then the respondent may request permission from the FEC to respond to same by filing a supplemental brief. Id.

All the aforesaid procedures are directed to the FEC's mandate to avoid litigation through conciliation efforts. The FEC has implicitly conceded this point:

> "As the current practice has demonstrated, the Commission's probable cause considerations and subsequent conciliation efforts are furthered when, in presenting their respective positions, respondents have the greatest practicable access to documents and information gathered by the agency, including certain information that might be favorable to respondent. This allows both Office of General Counsel and the respondents that are under investigation to present fully informed submissions and frame legal issues for the Commission's consideration.

*Agency Procedure for Disclosure of Documents and Information in the Enforcement Process,* 76 Fed. Reg. 34986, 34989 (June 15, 2011).  It is, therefore, indisputable that for the FEC to fulfill its conciliation responsibilities, it must, before filing suit, follow the referenced pre-filing notice and "opportunity to respond" procedures. See Nat'l Rifle Ass'n of Am., 553 F. Supp. at 1332–33; See also Adams, 558 F. Supp. 2d at 989.

Indeed, the FEC's compliance with its pre-filing duties is **jurisdictional.** "Accordingly, where the FEC fails. . . to comply with the mandatory prerequisites to suit, an enforcement suit is premature, and the court, at a minimum, must stay the action pending cure by the FEC, or in certain cases ***dismiss the suit for want of subject matter jurisdiction***." Nat'l Rifle Ass'n of Am., 553 F. Supp. at 1333 (footnotes omitted) (emphasis added).  In Fed. Election Comm'n v. Adams, 558 F. Supp. at 989, the court, in considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction relating to the FEC's alleged non-compliance with its pre-suit protocols, noted: "As part of establishing this Court's jurisdiction, the FEC stated that it satisfied all ***jurisdictional requirements***

prior to filing this action by attempting, for a period of at least thirty days, to enter into a conciliation agreement with Defendant…. ***Determining whether conciliation occurred is a prerequisite to filing suit.***" <u>Adams</u>, 558 F. Supp. at  988 (emphasis added).

Furthermore, the FEC has conceded the jurisdictional nature of its pre-suit obligations on numerous occasions. In <u>Fed. Election Comm'n v. Nat'l Republican Senatorial Comm.</u>, 877 F. Supp. 15, 18 (D.D.C. 1995), the court, in considering the FEC's request for a later statute of limitations accrual date, noted: "The FEC contends that even after it is able to initiate an investigation, it must comply with all of the FECA's statutorily required procedures before it can proceed in court." <u>Id.</u> at 18.

Even in this case, the FEC has conceded, on multiple occasions, that its pre-suit obligations are jurisdictional.  In its original Complaint, (<u>Ex. 8</u>, at ¶ 35) and in its *Am.Compl.*, (<u>Ex. 2</u>, at ¶ 33), the FEC, in pleading its compliance with its pre-suit obligations stated: "The Commission has satisfied all of the ***jurisdictional requirements*** in FECA that are prerequisites to filing this action." Likewise, in its Statement of Material Facts, (D.E. 142-1, at ¶ 45), the FEC stated: "The Commission has satisfied all of the ***jurisdictional prerequisites*** to filing this action." (emphasis added).  The FEC has in many of its other cases similarly characterized its pre-suit obligations as jurisdictional. <u>See</u> Ex. 9, *Chart Listing FEC Cases in which FEC Conceded Jurisdictional Nature of its Pre-Suit Duties*. Therefore, this Court has subject matter jurisdiction over this case only if the FEC gave Rivera the required notice and "opportunity to respond" that it was obligated to provide him with to discharge its duty to attempt to reach a conciliation agreement.  The FEC did not comply with its duties in this case, first, with respect to the commencement of this action, and second, with respect to the filing of its *Am.Compl.*, which was the FEC's most glaring violation.

The *Am.Compl.* was premised upon new facts and legal theories, which were never presented to the FEC Commissioners for approval, about which Rivera had never been given prior notice or an "opportunity to respond," and which the FEC had never attempted to discuss with Rivera as part of any conciliation effort. In its Original Complaint, the FEC accused Rivera of having knowingly helped and assisted false name contributions in violation of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)(1)(iii), which the Court later dismissed under FEC v. Swallow, 304 F. Supp. 1113 (D. Utah 2018). See Ex. 10, *Order on Motion to Dismiss (Sept. 24, 2018) (D.E. 31)*, at pp. 4-5.

As the Court noted in its order, the original Complaint was devoid of any allegation against Mr. Rivera of primary responsibility: "[The complaint] does not reference §§ 110.4(b)(1)(i) or 110.4(b)(1)(ii) at all, and as Rivera argues in his original Motion, does not allege that Rivera secretly made donations without Sternad's knowledge, or that he himself used a false name, or that he himself instructed Sternad to falsify the disclosure forms." Id. at p. 5. The FEC fixed those problems in the *Am.Compl.*, changing its legal theory from secondary liability under 11 C.F.R. §110.4(b)(1)(iii) to primary liability under 11 C.F.R. §110.4(b)(1)(i) and drafting new factual allegations to support that change. See Ex. 16, *Summary of FEC's Factual and Legal Modifications to the Amended Complaint*. With the addition of its new legal and factual allegations, the FEC, by analogy, elevated Rivera from an alleged "getaway driver" to the alleged "bank robber." Granted, both complaints addressed the same alleged "robbery," but Rivera's alleged role from one complaint to another changed substantially and materially.[10]

---

[10] In addition to adding allegations, the FEC also deleted allegations from the *Am.Compl.* In the original, (Ex. 8, at ¶¶ 19, 20), the FEC accused Rivera of delivering a $13,824.85 check to one vendor and then directing that vendor to write a $9000.00 check to another. These allegations do not appear in the *Am.Compl.* The deletion of these allegations was material, as without them, the illegal contributions attributed to Rivera were reduced, thereby lowering his exposure to civil

Notably, the only common allegations between the two complaints are those relating to the FEC's compliance with its jurisdictional pre-suit obligations, which are virtually identical in both documents and conclude with the FEC voting on July 11, 2017 to commence litigation against Rivera.  However, what is glaringly **absent** from the jurisdictional allegations in the *Am.Compl.* is any indication that the Commission had considered and approved the new factual and legal allegations, or that the FEC had given Rivera prior notice and an opportunity to respond to them or that the FEC had even attempted to reach a conciliation agreement with Rivera regarding them. The FEC's failure to attend to those duties before filing its *Am.Compl.* mandates dismissal of this action.

In a similar case, Fed. Election Comm'n v. Nat'l Rifle Ass'n of Am., the FEC commenced a FECA enforcement action against the National Rifle Association. 553 F. Supp. at 1332–33.  Prior to filing suit, the FEC's allegations were limited to one group of alleged illegal expenditures, referred to as the Beeson Expenditures, concerning which the FEC had discharged its pre-suit obligations. Id. at 1335. After the FEC voted to commence litigation strictly on the Beeson Expenditure allegations, FEC's counsel drafted its complaint to include, in addition to the Beeson Expenditures, other non-Beeson allegations, which the FEC had not voted on and were absent from the FEC's notice, "opportunity to respond," and conciliation efforts with the defendants. Id.  The Court subsequently found that the FEC's failure to discharge its pre-suit obligations as to the non-Beeson allegations left it without jurisdiction to hear them, requiring their dismissal. Nat'l Rifle Ass'n of Am., 553 F. Supp. at 1337–38.

---

penalties, a factor which would have been relevant in conciliation discussions between Rivera and the FEC regarding the *Am.Compl.*, had they occurred.

As discussed below, Rivera never received the FEC's probable cause brief or proposed conciliation agreement…more about that momentarily.  However, the FEC did produce those documents in discovery, which are attached as Exhibits 5 and 6.  Both documents reveal that the FEC only voted on allegations that Rivera violated 52 U.S.C. §30122 and 11 C.F.R. §110.4(b)(1)(iii), for assisting in making contributions from unknown contributors in the name of another, the same charges this Court subsequently dismissed. There is no indication from any of the documents the FEC produced in this case that the FEC has ever considered, let alone approved, the revised legal and factual allegations asserted in the *Am.Compl.* Further, as Mr. Rivera swears in his declaration, the FEC, prior to filing the *Am.Compl.*, never gave him notice, an "opportunity to respond" to or attempted to reach a conciliation agreement with him about these new allegations. Ex. 11, *Declaration of David of Rivera*.  Therefore, as in Nat'l Rifle Ass'n of Am., the FEC failed to discharge its pre-suit obligations pertaining to the new legal and factual allegations included in the *Am.Compl.*, leaving this court without jurisdiction to consider them.[11]

Dismissal of this action is further warranted based on the FEC's failure to discharge its pre-suit obligations prior to the commencement of this action.  The FEC did attempt to send a probable cause brief to Rivera.  See Ex. 5, *FEC Ltr to Rivera Forwarding Probable Cause Brief (April 28, 2017)*.  However, that correspondence was twice returned to the FEC, once by the U.S. Post Office and once by UPS. See Ex. 12, *Return of Correspondence to the FEC from the U.S. Post Office*

---

[11] The notion that the FEC can change legal or factual theories against a respondent without giving a respondent prior notice and an "opportunity to respond" are belied by the FEC's own agency practices and procedures.  In its *Agency Procedures Following the Submission of Probable Cause Briefs by the Office of General Counsel*, 76 Fed. Reg. 63570 (Oct. 13, 2011), the FEC permits a respondent to request permission to file a supplemental brief if the FEC's general counsel, after receiving the respondent's probable cause reply brief or after a probable cause hearing, includes new legal theories or facts in his or her notice to the Commission concerning whether he or she is proceeding with his recommendation that the Commission find probable cause.

*(May 3, 2017) and UPS (Apr. 29, 2017)*, at FEC Bates No. 00864, 00866, and 00867.[12.][13] The

FEC also apparently tried to deliver these documents to Rivera via email. <u>See</u> Ex. 13, *Email from*

*Ana Wallace to Rivera (Apr. 28, 2017).*   Rivera never received this email.[14]  <u>See</u> Ex. 11,

*Declaration of David Rivera.*   The FEC knew that Mr. Rivera was spending much of his time in

Haiti and that the most reliable way to contact him was by phone, which the FEC ultimately did,

but only after Mr. Rivera's time for filing a reply probable cause brief had expired. <u>See</u> Ex. 14,

*Memo of Phone Call Between FEC Counsel Ana Wallace and Rivera (June 27, 2017).*   Indeed,

Ms. Wallace made that call to Mr. Rivera to discuss a proposed conciliation agreement which the

FEC had authorized after finding probable cause against him on June 1, 2017, well after Mr.

---

[12.] The UPS correspondence states that "receiver" refused acceptance of the package; however, Mr. Rivera was not living at this residence during this time.  <u>See</u> Ex.  11, *Declaration of David Rivera.* Additionally, the "receiver" who refused acceptance is an unidentified person.

[13] The return of this correspondence to the FEC calls into question the honesty of the FEC's representations to this Court regarding its compliance with its pre-suit obligations. In both the Original Complaint (¶ 31) and in the *Am.Compl.* (¶29), the FEC represented that the Commission's general counsel had notified Rivera on April 28, 2017 that it was prepared to recommend that the Commission find probable cause against him and that the FEC had provided him with a copy of general counsel's probable cause brief.  The allegation concluded with the representation that "Rivera did not submit a written response," which the FEC knew at the time that he could not have done because the FEC probable cause documents had not been delivered to him.  The FEC then represented that they had informed Rivera by letter dated June 2, 2017, that the FEC had found probable cause and that it was offering a settlement based on an enclosed conciliation agreement. <u>See</u> Ex.  6, *FEC's Ltr to Rivera dated June 2, 2017 Enclosing Proposed Conciliation Agreement*. The FEC sent that letter to the **same non-deliverable address**, already aware that that Rivera was not receiving mail there. Mr. Rivera never received this correspondence. <u>See</u> Ex. 11, *Declaration of David Rivera*.  Yet, the FEC represented to this Court in both versions of the complaint, (¶ 34 of the Original and ¶ 32 of the Amended) that it was unable to secure an acceptable conciliation agreement with him.  Indeed, the only effort the FEC appears to have made to conciliate with Rivera was FEC's counsel's call to him on June 27, 2017, which was without Mr. Rivera having the benefit of a copy of the proposed agreement and after his opportunity to contest probable cause had expired. <u>See</u> Ex.  14, *Memo of Phone Call Between FEC Counsel Ana Wallace and Rivera ( June 27, 2017).*  Similar misleading representations were made by the FEC in its Statement of Material Facts, (D.E. 142-1 at ¶¶ 42-45), and in the supporting affidavit of Kristina M. Portner, (D.E. 142-1, Ex.  33, ¶¶ 3, 5, 6).

[14] This email was produced by the FEC in discovery.

Rivera's deadline for filing a reply brief and requesting a probable cause hearing had expired.

With the *fait accompli* complete, Ms. Wallace, in her memo, states that she had informed Mr. Rivera about the conciliation agreement and was awaiting a Haitian address from him to which she could send the document, but that Mr. Rivera never got back to her that day.  Ms. Wallace apparently never appreciated that the document could have been texted to Mr. Rivera directly from her phone. Regardless, even if Rivera never got back to Wallace, Wallace's efforts were already too little too late because the window for Mr. Rivera to exercise his rights at the probable cause stage had expired.

Ms. Wallace delayed her call to Mr. Rivera until Mr. Rivera's deadline for exercising those rights had passed.  Her attempts to conciliate by phone ring hollow because she could have called Rivera before his procedural rights at the probable cause stage lapsed, particularly after learning the FEC's probable cause correspondence had been returned for non-delivery.  That is the call that should have been made because the FEC knew that any attempt to discharge its duty to attempt to conciliate required giving Mr. Rivera prior notice of its allegations and an opportunity to respond, which he did not receive, at no fault of his own.  Clearly, the FEC fell short in discharging its pre-suit obligations prior to commencing this action, further warranting dismissal of this case for lack of subject matter jurisdiction.

## <u>CONCLUSION</u>

The FEC compromised this Court by gambling that its shortcomings in properly commencing this case would go unnoticed. That gamble failed. The FEC had five years, from 2012 to 2017, to timely commence this lawsuit and discharge its statutory pre-filing responsibilities. Its failure to do so has left this Court without subject matter jurisdiction, absent which this Court may not hear this case. Accordingly, this Court must dismiss this case with prejudice.

Dated: March 31, 2021                    Respectfully Submitted,

/s *Jeffrey D. Feldman*

Jeffrey D. Feldman, Esq. / Fla Bar No. 330302
**TRAILBLAZER**
1200 Brickell Avenue, Penthouse 1900
Miami, Florida  33131
Telephone:  305-222-7852
Facsimile:  305-760-4193
E-Mail: jfeldman@trailblazerlaw.com
***Counsel for Defendant, David Rivera***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  */s   Jeffrey D. Feldman*
                                                  JEFFREY D. FELDMAN

## SERVICE LIST

*Federal Election Commission vs. David Rivera*
Case No. 17-22643 Cooke/Goodman

Greg J. Mueller, Esq.
FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC  20463
Tel.:  202-694-1650
Email:  gmueller@fec.gov

Lisa J. Stevenson, Esq.
Acting General Counsel
FEDERAL ELECTION COMMISSION
999 E. Street, NW
Washington, DC  20463
Tel.:  202-694-1650
Email:  lstevenson@fec.gov

Kevin Deeley, Esq.
Associate General Counsel
FEDERAL ELECTION COMMISSION
999 E. Street, NW
Washington, DC  20463
Tel.:  202-694-1650
Email:  kdeeley@fec.gov
**Counsel for Plaintiff, Federal Election Commission**

Shaina Ward, Esq.
FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC  20463
Tel.:  202-694-1566
Email:  sward@fec.Gov

Roy J. Kahn, Esq.
**ROY J. KAHN, P.A.**
800 Brickell Avenue, Suite 1400
Miami, Florida  33131
E-Mail:  rjk@roykahnlaw.com
Telephone:  305-358-7400
Facsimile:  305-358-7222
**Counsel for Defendant, David Rivera**