# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# CASE NO. 17-22643 COOKE/GOODMAN

|  |  |
|---|---|
| FEDERAL ELECTION COMMISSION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) OPPOSITION TO MOTION |
| DAVID RIVERA, | ) TO DISMISS |
|  | ) |
| Defendant. | ) |
|  | ) |

# FEDERAL ELECTION COMMISSION'S OPPOSITION
# TO DEFENDANT'S MOTION TO DISMISS
# FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff Federal Election Commission ("FEC" or "Commission") respectfully submits this Memorandum of Law in Opposition to Defendant David Rivera's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 171) (hereinafter, "Motion"), and in support thereof states as follows:

## SUMMARY OF ARGUMENT

David Rivera's Motion is based on two flawed theories: First, Rivera argues that the FEC's Amended Complaint is barred by the five-year statute of limitations because the date Justin Lamar Sternad signed his first FEC disclosure report was more than five years before the FEC filed its complaint, but the contributions described in that disclosure report were not alleged as violations in the FEC's original or amended complaints.  Second, Rivera argues that the Commission failed to meet its statutory obligations to provide him certain notifications regarding its administrative proceedings and to attempt to conciliate prior to filing suit.  However, the Commission met its notice obligations and attempted to conciliate the matter through repeated and diligent pre-litigation efforts to contact the defendant.  Rivera's arguments are meritless, and the Motion should be denied.[1]

## BACKGROUND

As this Court held in its Order Granting Plaintiff  FEC's Motion for Summary Judgment (ECF No. 163) ("MSJ Order"), then-U.S. Congressman Rivera directly violated the Federal Election Campaign Act ("FECA" or "Act") in 2012 by making $75,927.31 of in-kind contributions in the name of another to the primary campaign of Justin Lamar Sternad in violation of 52 U.S.C. § 30122.  (MSJ Order at 34.)  Rivera made these in-kind contributions to vendors providing services to the Sternad campaign, while taking steps to hide his identity as the source, including using cash to cover his tracks, and directing others to conceal his identity as the true source.  The factual record in this case has been set forth in detail in the FEC's previously filed Motion for Summary Judgment and Memorandum of Law, (ECF No. 142), and this Court's MSJ Order and therefore the FEC provides this brief procedural background as is relevant for purposes of defendant's Motion.

---

[1] In addition, counsel for defendant did not confer with FEC counsel prior to filing the Motion, and did not file a certificate of compliance, in violation of Local Rule 7.1(a)(3). *Kaplan v. Lappin*, No. 10-80227, 2011 WL 13225150, at *1 (S.D. Fla. Feb. 23, 2011) ("The law in this District is well established that if a party fails to confer pursuant to LR 7.1 A3, the Court may deny the motion and impose appropriate sanctions, including reasonable attorney's fees.")

On April 26, 2013, the Commission notified David Rivera by mail that it had received information in the normal course of carrying out its supervisory responsibilities indicating that Rivera may have violated provisions of the Act, provided him with factual information, and gave him an opportunity to respond. (Decl. of Ana Peña-Wallace ¶ 2 (submitted herewith).) Rivera submitted no response. (*Id.*) After the Commission unanimously found reason to believe that Rivera had knowingly and willfully violated 2 U.S.C. § 441f (now 52 U.S.C. § 30122), it notified Rivera of the alleged violation and its factual basis on September 11, 2013. (*See* 52 U.S.C. § 30109(a)(2); Am. Compl. ¶ 27 (ECF No. 41); Ans. ¶ 27 (ECF No. 50); FEC Summ. J. Exh. 33, Portner Decl. ¶ 3 (ECF No. 142-36).) This notification was sent by mail to 10925 N.W. 43rd Lane, Doral FL 33178-1823 (the "43rd Lane Address"). In September 2013, Rivera designated counsel to appear for him before the FEC and listed the 43rd Lane Address as his address. (Peña-Wallace Decl. ¶ 3.) Rivera's counsel mailed a response to the Commission's reason-to-believe letter denying that Rivera had made contributions in the name of another. (*Id.*; Am. Compl. ¶ 28; Ans. ¶ 28.) Agency staff provided a courtesy copy to Rivera's counsel of the earlier notification from April. (Peña-Wallace Decl. ¶ 4.)

In order to secure an interview with Rivera during the Commission's investigation, an FEC attorney communicated with Rivera's counsel by phone, email, and overnight mail, and even attempted to send a fax, and communicated with Rivera by phone and email, but was unable to secure an interview. (Peña-Wallace Decl. ¶¶ 4-7.) On December 16, 2016, Rivera was sent a subpoena with questions and document requests to the 43rd Lane Address and the email address he had provided. (*Id.* ¶ 10.) Rivera emailed a response on January 16, 2017. (*Id.*)

After the completion of the investigation, the FEC's General Counsel notified Rivera on April 28, 2017 of her recommendation that the Commission find probable cause to believe that he knowingly and willfully violated 52 U.S.C. § 30122 and provided a brief with her positions on the legal and factual issues in the matter. (52 U.S.C. § 30109(a)(3); Portner Decl. ¶ 5 (ECF No. 142-36).) The FEC sent this notification by UPS overnight mail and the tracking information indicated that on April 29, 2017, "[t]he receiver does not want the product and refused the delivery." (Peña-Wallace Decl. ¶ 11.) The notification was also, however, sent to the same email address with which Rivera had previously used to communicate. (*Id.*) Rivera did not submit a written response. (*Id.*) Notice that the General Counsel intended to proceed

with the recommendation that the Commission find probable cause was sent to Rivera's 43rd Lane Address and email in May 2017. (*Id.* ¶ 12.)

On June 1, 2017 the Commission voted 5-0 to find probable cause to believe that Rivera had knowingly and willfully violated 52 U.S.C. § 30122. (Portner Decl. ¶ 6 (ECF No. 142-36).) On June 2, 2017, the Commission notified Rivera of these findings and sent a proposed conciliation agreement to initiate the required attempt to correct the violations through the informal method of entering into such an agreement. (*Id.*; 52 U.S.C. § 30109(a)(4)(A)(i).) The letter and proposed agreement were sent to Rivera by mail on June 2, 2017, at the 43rd Lane Address and by email on June 5, 2017. (Peña-Wallace Decl. ¶ 13.) FEC counsel also sent an additional follow-up and placed several calls to Rivera. (*Id.* ¶ 14.) Although he did answer one call, he only responded by claiming not to have received the proposed agreement but then did not provide an alternative active address. (*Id.*)

Unable to conciliate the matter, the Commission voted unanimously to authorize this lawsuit and it was filed on July 14, 2017. (52 U.S.C. § 30109(a)(6); Portner Decl. ¶ 7; Compl. (ECF No. 1).) The complaint alleged that Rivera violated 52 U.S.C. § 30122 and a subparagraph of its implementing regulation, 11 C.F.R. § 110.4(b)(1)(iii), which prohibits knowingly helping or assisting the making of a contribution in the name of another. The Court granted the Commission additional time to serve process on Rivera after finding that "[w]hether through coincidence or by design" Rivera "has dodged service in this matter and has otherwise failed to respond" to attempts to contact him by the FEC and the United States Marshals Service. (Order Granting Mot. to Extend the Time for Service at 1 (ECF No. 11).) The Marshals were able to successfully serve Rivera on October 20, 2017 at an airport. (Process Receipt and Return (ECF No. 15).)

Rivera then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Mot. To Dismiss Compl. (ECF No. 17).) Following the submission of the parties' briefing on that motion, the United States District Court for the District of Utah issued an opinion in another case brought by the FEC. That court granted a motion to dismiss, enjoined the Commission from enforcing 11 C.F.R. § 110.4(b)(1)(iii), and ordered that subparagraph stricken from the Code of Federal Regulations. After additional briefing about that decision, this Court granted Rivera's motion to dismiss, construing the original complaint as exclusively seeking relief under 11 C.F.R. § 110.4(b)(1)(iii). (Order on Mot. to Dismiss at 1-5 (ECF No. 31).) Because

3

that complaint was inartfully pled rather than lacking a jurisdictional basis outside of the helping or assisting regulation, the Commission sought leave to file an amended complaint focusing on Rivera's primary liability for violating FECA's prohibition on contributions in the name of another, 52 U.S.C. § 30122.  (FEC's Mot. to Reopen and for Leave to File Am. Compl. (ECF No. 32).)  The Court granted that motion (Order, January 5, 2019 (ECF No. 40)), and the Amended Complaint was filed on January 15, 2019.  (ECF No. 41.)  Defendant then filed a 12(b)(6) Motion to Dismiss the FEC's Amended Complaint, arguing that the Amended Complaint did not state a claim because it failed to allege that Rivera concealed his identity from the vendors involved and the Sternad campaign and that the FEC's claim is barred by the statute of limitations.  The Court denied defendant's Motion in its entirety, holding that the FEC had stated a claim for a violation of section 30122, and that the Amended Complaint related back to the July 14, 2017 date of the original complaint and was therefore timely.  *See* Tr. of Hr'g on MTD Am. Compl. (ECF No. 49); *see also* ECF No. 40.  On February 23, 2021, this Court issued its Memorandum Opinion awarding summary judgment to the Commission.  (MSJ Order.)  As directed by the Court, the FEC filed its Proposed Order and Final Judgment on February 26, 2021.  (ECF No. 167-1).

## ARGUMENT

### I. THE STATUTE OF LIMITATIONS DOES NOT BAR THE COMMISSION'S CLAIM

Having failed on his previous attempt to dismiss the FEC's Amended Complaint on statute of limitations grounds, Rivera now asserts a new theory.  He argues that the five-year statute of limitations set out at 28 U.S.C. § 2462 bars the FEC's Amended Complaint in its entirety because Sternad first reported contributions to his campaign that were made from May 2012 to June 2012 in his Quarterly Report of Receipts and Disbursements submitted on July 10, 2012, more than five years before the July 14, 2017 filing date of the FEC's complaint.  (Motion at 6).  Rivera argues this is the determinative date for when all claims for Rivera's illegal contributions accrued, regardless of whether Rivera's contributions to the Sternad campaign occurred after that date.  Rivera has pointed to this July 10, 2012 date even though, as defendant concedes, none of the contributions from Sternad's June 2012 disclosure report were alleged in the FEC's Original Complaint or the FEC's Amended Complaint.  Indeed, all of the contributions the FEC alleged that Rivera made in violation of 52 U.S.C. § 30122 in the

4

Amended Complaint occurred within the limitations period in July and August 2012, and were later reported in Sternad's subsequent disclosure reports.² Rivera further argues that equitable remedies based on the same set of facts are likewise barred by the statute of limitations. (*Id.* at 4).

Section 2462 generally provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. Although FECA does not contain an explicit statute of limitations, courts have routinely "applied the catch-all five-year limitations period set forth in 28 U.S.C. § 2462" to requests by the FEC for civil penalties. *Citizens for Resp. & Ethics in Wash. v. Am. Action Network*, 410 F. Supp. 3d 1, 23 (D.D.C.), *mot. to certify appeal denied*, 415 F. Supp. 3d 143 (D.D.C. 2019).³

---

² Sternad originally reported contributions received from July 2012 to August 2012 as personal loans. (*See* ECF No. 142-12 (Exh. 9 to FEC's Mot. for Summ. J.); MSJ Order at 22-23.) After his guilty plea, Sternad amended his FEC disclosure reports to reflect that what had previously been reported as "loans from personal funds" had actually come in via contributions. (*See* ECF Nos. 142-42, 142-43 & 142-44 (Exhs. 39-41 to FEC's Mot. for Summ. J.).)

³ Rivera further argues that § 2462 creates a jurisdictional bar to bringing suit rather than a rather than a non-jurisdictional time limit that can be raised as an affirmative defense. In support of this argument, Rivera cites *SEC v. Graham*, 21 F. Supp. 3d 1300, 1308 (S.D. Fla. 2014) ("Graham I"), *aff'd in part and rev'd in part*, *SEC v. Graham*, 823 F.3d 1357 (11th Cir. 2016) ("Graham II"). The *Graham I* court held that the time limit contained in § 2462 was a jurisdictional bar. On appeal, the Eleventh Circuit declined to address whether § 2462 was a bar to jurisdiction, instead deciding that § 2462 did not apply to the equitable remedies the SEC sought in that case. However, as another court in the Eleventh Circuit has explained, "*Graham I* preceded the Supreme Court's decision in *Wong*, which 'made plain that most time bars are nonjurisdictional.' Therefore, *Graham I*'s reasoning has been undermined and the text of § 2462 does not support the limitation being jurisdictional." *United States v. Hines*, No. 3:16-CV-1477-J-32PDB, 2017 WL 6536574, at *2 n.2 (M.D. Fla. Dec. 21, 2017) (quoting *U.S. v. Wong*, 575 U.S. 402, 409 (2015)). In any event, the Court need not decide this issue — and whether § 2462 applies to the equitable injunction that was issued — because the claims in the FEC's Amended Complaint were timely filed and § 2462 therefore poses no bar to the civil penalties this Court awarded.

5

Rivera's statute of limitations argument fails for two reasons.  First, Rivera's theory is a variation of an argument that has already been rejected by this Court.  Second, Rivera's argument is based on a misunderstanding of the law.

### A. STERNAD'S JULY 10, 2012 DISCLOSURE REPORT DOES NOT BAR THE FEC'S CLAIMS

In his motion, Rivera again attempts to place all emphasis on Sternad filing the disclosure reports for his campaign, arguing that it was Sternad's false statement of attributing the contributions to himself, as personal loans, that was the gravamen of Rivera's illegal acts.  As explained in the Commission's Opposition to Defendant's Motion for Summary Judgment (ECF No. 148), Rivera continues to conflate section 30122 with what is actually a violation of 18 U.S.C. § 1001, an argument that he proffered and that was rejected by this Court in his motion to dismiss the FEC's Amended Complaint.  (*See* ECF No. 49 at 13:3-7 (Tr. of Hr'g on MTD Am. Compl. at 13:3-7) (Rivera's counsel arguing that "[i]t's a 1001 violation" because "[t]he FEC is requiring the candidate to truthfully disclose").)  And in granting the FEC's Motion for Summary Judgment and denying defendant's, this Court held that Rivera willfully violated 30122 by "using cash to make contributions to the Sternad Campaign to thereby avoid a paper trail reflecting that he was the source of the contributions; utilizing Alliegro and other third parties as the 'middleman' in the scheme to transfer funds to and/or pay invoices on behalf of the Sternad Campaign; and directing Sternad, through Alliegro, in how to complete and submit false FEC filings."  (MSJ Order at 35.)

Nevertheless, once again, the defendant would like to characterize the violation as one related to recordkeeping by Sternad, by making the date he filed his initial disclosure report as somehow determinative of when all of the FEC's claims accrued.  To be sure, Sternad himself separately violated FECA and pled guilty for his role in this scheme. *See United States v. Sternad*, Case No. 13-cr-20108-CMA (S.D. Fla. Mar. 15, 2013) (ECF No. 13) (Justin Lamar Sternad Factual Basis of Guilty Plea).  However, and as this Court already has held, the contributions in the name of another occurred when Rivera made multiple cash payments to third-party vendors providing services to the Sternad campaign from approximately July 14, 2012 to August 8, 2012, took steps to hide his identity, and directed others not to disclose himself as the true source.  Rivera cites no case for his perplexing proposition that the statute of limitations for these illegal contributions began on the date Sternad filed his first disclosure

6

report, and that this date is determinative for all the illegal contributions that Rivera made after this date.

Furthermore, Rivera seems to believe that the fact that the May 2012 and June 2012 contributions from Sternad's July 10, 2012 disclosure report were noted during the enforcement process in the Commission's Factual and Legal Analysis, (Motion Exh. 4), and the General Counsel's Brief to the Commission, (*Id.* Exh. 5), but not the Amended Complaint shows that the FEC attempted to "suppress its awareness," that the statute of limitations had "expired" before commencing to file suit. (*Id.* at 9.) Despite defendant's arguments otherwise, there was no deceptive machination on the part of the FEC in not including these contributions in its complaint. Rather, the FEC simply included those contributions that were clearly within the five-year statute of limitations when the FEC filed this action on July14, 2017, that is, the in-kind contributions Rivera made in the name of another between July 2012 and August 2012. It is well settled that "[t]he plaintiff is the master of the complaint [and] selects the claims that will be alleged in the complaint." *United States v. Jones,* 125 F.3d 1418, 1428 (11th Cir.1997). *See also Frederick v. Palm Beach Cmty. Coll.*, No. 07-80233-CIV, 2007 WL 9701857, at *1 (S.D. Fla. Aug. 31, 2007) (granting motion to remand to state court where plaintiff had "amended her complaint in light of the fact that the statute of limitations had run pursuant to her federal claims . . . and chose to continue only on grounds involving state issues").

Moreover, the Amended Complaint's focus on a subset of the transactions that were included in the pre-suit Enforcement process has no bearing on the statute of limitations for those transactions. The Court has already held that the allegations in the amended complaint relate back to the original complaint. *See* Tr. on MTD (ECF No. 49); *see also* Order (ECF No. 40). The only violation from the original Complaint that was omitted from the Amended Complaint was the latest-occurring one, on August 9, 2012. (*Compare* Compl. ¶ 13 (ECF No. 1) *with* Am. Compl. ¶ 13 (ECF No. 40).) Furthermore, evidence that predates Rivera's contributions that began in July 2012 is still admissible to prove the existence of the scheme, its background, and Rivera's knowledge and intent, even if not part of the FEC's timely claims. *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period."); *see also United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir.) ("The statute of limitations is a defense . . . not a rule of evidence. . . . [It] has no

7

bearing on the admissibility of evidence .”), *cert. denied*, 423 U.S. 829 (1975); *In re Rothstein Adler, P.A.,* 2010 WL 5173796, at *5 (S.D. Fla. Dec. 14, 2010) ("[c]riminal plea agreements are admissible to establish the existence of a Ponzi scheme and a wrongdoer's fraudulent intent"). The Court's reliance on events before July 17, 2012, to establish a violation of § 30122 that occurred after that was thus entirely permissible. (*See, e.g.*, MSJ Order at 21-23.)

### B. RIVERA'S CONDUCT WAS NOT A "SINGLE VIOLATION"

Second, Rivera incorrectly paints his conduct as a "single violation" that accrued on July 10, 2012. (Motion at 4, 9.) But his conduct was not confined to a single point in time and his "illegal conduct" may be "punished;" he may not "invok[e] the earliest manifestation of [his] wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time." *See, e.g.*, *SEC v. Almagarby*, 479 F. Supp. 3d 1266, 1271 (S.D. Fla. 2020). Discrete but repetitive transactions constitute independently actionable individual violations.

Indeed, Rivera's argument is similar to one recently rejected by this Court in *Almagarby*. In that case, the defendants argued that the statute of limitations precluded a disgorgement remedy because they started their aged debt transactions more than five years before the SEC filed its complaint. *Id.* at 1270. This Court denied defendants' motion for summary judgment, holding that the SEC's claims were not time-barred because at least one of the defendants' transactions that led to a disgorgement claim occurred within the five-year statute of limitations period. *Id*. at 1271.[4] *See also Birkelbach v. SEC*, 751 F.3d 472, 479 (7th Cir. 2014) (holding that each instance where defendant failed to supervise a subordinate who engaged in trading misconduct was a distinct violation of the duty to supervise and created a separate claim). The FEC's Amended Complaint alleges that Rivera made the illegal contributions between July 2012 and August 2012, and only seeks to recover civil penalties based on the contributions occurring during that time frame, all within the five-year statute of limitations period.

---

[4] Rivera's reliance on *FEC v. Nat'l Repub. Senatorial Comm.*, 877 F. Supp. 15 (D.D.C. 1995), (Motion at 5), is also misplaced. At issue in that case was whether the claim accrued *after* the Commission completed its investigation and satisfied the statutory requirements contained in FECA. The Court concluded that the claim accrued *before* the end of the administrative process, and that the action was not filed until seven years after all the events at issue had completed. 877 F. Supp. at 21. *3M Co. (Minnesota Min. & Mfg.) v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994), (Motion at 10, n. 8), is also inapplicable because that case evaluated whether a "discovery of violation" rule applied, which is not at issue here. 17 F.3d at 1460.

Defendant's dependence on *Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666 (10th Cir. 2016) for his argument that the FEC has alleged only a "single violation," (Motion at 4-5), is misplaced. In that case, an environmental organization sued the defendant for alleged violations of the Clean Air Act arising from unpermitted modifications to a boiler at a power plant. The court held that the plaintiff's action was time-barred because it was brought more than five years after modification began on the boiler, even if unpermitted work on the boiler occurred after that. 816 F.3d at 669. In so holding, the court explained that the modification of the boiler was a single act, and that a cause of action seeking civil penalties for the owner's failure to obtain a permit accrued for statute of limitations purposes on the first day of modification. *Id.* at 672. The court held that it was "the act of constructing itself that is unlawful." *Id.* Rivera's asserted application of *Sierra Club* here leads to the proposition that if he began making illegal contributions to Sternad's campaign and avoided detection for five years after the date Sternad signed his first disclosure report, he could continue to do so indefinitely without penalty. Such a conclusion does not follow from *Sierra Club*, which is more narrowly focused on the conduct of modifying a boiler for a facility. All of the violations the Court found occurred within the statute of limitations and Rivera's arguments regarding the timeliness of the FEC's complaint should be rejected.

## II. THE FEC TRANSMITTED ALL REQUIRED ADMINISTRATIVE NOTIFICATIONS TO RIVERA

Contrary to Rivera's claim, the record shows the FEC provided repeated and ample notice to Rivera at each stage of the administrative proceedings. For a matter like Rivera's that the FEC generates, the agency is required to notify alleged violators when the Commission has found reason to believe they committed violations, 52 U.S.C. § 30109(a)(2), and when the General Counsel is recommending probable cause to believe they committed violations, 52 U.S.C. § 30109(a)(3). The agency not only transmitted those notifications, it undertook extraordinary efforts to send them through multiple means and to multiple recipients. Moreover, these facts have been established for purposes of this case, through the parties' summary judgment papers and in part through Rivera's admissions in his Answer as well.

First, Rivera's own admissions in his Answer to the Amended Complaint show that he received notification that the Commission had found reason to believe that he had

9

committed violations that included the allegation and the factual basis. (52 U.S.C. § 30109(a)(2); Am. Compl. ¶¶ 27-28 (ECF No. 41) (describing vote to find reason to believe and notification that provided a Factual and Legal Analysis); Ans. ¶¶ 27-28 (ECF No. 50)).) The notification was sent to Rivera's 43rd Lane Address. (Peña-Wallace Decl. ¶ 3.) Indeed, as Rivera also admits, he submitted a designation of counsel and submitted through counsel a response to the agency's findings. (Am. Compl. ¶¶ 27-28 (ECF No. 41); Ans. ¶¶ 27-28 (ECF No. 50).)

The FEC's Office of General Counsel provided two notices of its recommendation that the Commission find probable cause to believe that he committed violations. (52 U.S.C. § 30109(a)(3); Portner Decl. ¶ 5 (ECF No. 142-36).) Word was first sent that the Office was prepared to make that recommendation, along with a brief stating the General Counsel's position, by UPS overnight mail. (Peña-Wallace Decl. ¶ 11.) Delivery was refused at Rivera's property, but the notification was also sent to Rivera's email address. (*Id.*) A second notice that the General Counsel intended to proceed with the recommendation as planned was also sent to both Rivera's physical and email address. (*Id.* ¶ 12.)

Rivera did not submit a response to the General Counsel's probable cause recommendation. But as with other types of administrative proceedings, when Rivera later decides to disengage he cannot "rely on his own refusal to participate in these proceedings to argue that he was not given a meaningful opportunity to be heard." *Marcelin v. City of W. Palm Beach*, 417 F. App'x 848, 851 (11th Cir. 2011) (per curiam) (citing *Harrison v. Wille,* 132 F.3d 679, 684 (11th Cir.1988)).[5]

In fact, FEC staff made diligent and consistent efforts to provide notice well beyond the minimum required by statute. At each stage the Commission sent notifications to Rivera's 43rd Lane Address. (Peña-Wallace Decl. ¶¶ 2-3, 7, 10-13, 15.) At the point Rivera designated counsel in this matter the FEC provided all notifications in the case to Rivera's counsel. (Peña-Wallace Decl. ¶¶ 4-5.) When Rivera provided the FEC with his

---

[5] The record shows repeated instances of Rivera's failures to comply with legal processes. He was found to have aided a witness in twice escaping the country while the criminal process unfolded. (MSJ Order at 18.) He dodged service of process. (*See supra* p. 3.) And he agreed to payment of a portion of the costs sought in a sanctions motion as a result of his repeated refusals to comply with the terms of deposition notices. (Agreed Order on Motion for Sanctions (ECF No. 169).)

10

"Rivera2002@comcast.net" email address the FEC provided notifications to him through that means, in addition to notification sent to his address. (Peña-Wallace Decl. ¶¶ 7, 10). Despite the fact Rivera now denies receiving those emails, (Motion at 19), he responded to FEC counsel from that email address during the administrative proceedings (Peña-Wallace Decl. ¶¶ 9-10) and he continued to use that email address as recently as July of 2020 during the pendency of discovery in this case. (Exh. 10 to Decl. in Supp. of Mot. for Sanctions, July 28, 2020 (email from Rivera to Kahn) (ECF No. 133-11).) Regardless of which documents Rivera acknowledges he received, the record also shows that Rivera participated in the administrative process. He filed a response, filed designation of counsel listing his address, and spoke with FEC counsel regarding this matter. (Peña-Wallace Decl. ¶¶ 3,7). FEC staff consistently mailed notices to his address of record, attempted to reach him through counsel when it appeared he was represented, and made repeated attempts to contact him by phone.

Moreover, at the summary judgment stage, the Commission already established through testimony and supporting documentary evidence that it met each statutory prerequisite. (SOF ¶¶ 42-45 (ECF No. 142-1) (citing Portner Declaration ¶¶ 3-7 (ECF No. 142-36).) In response, Rivera did not meaningfully controvert these facts, putting forth a single evidentiary objection that the facts "cannot be presented in a form that would be admissible in evidence" citing Fed. R. Civ. P. 56(c)(2). (Def.'s Statement of Material Facts Submitted in Opp'n to Pl.'s Mot. for Summ. J. ¶¶ 42-44 (Aug. 22, 2020) (ECF No. 147).) But the facts were supported by admissible declaration testimony and documentary evidence. (Portner Decl. ¶¶ 3-7.) As with other sworn testimony the Court considered, Rivera simply misapprehends the evidentiary requirements at summary judgment. (MSJ Order at 14-15.) Rivera's late and broad denials are inconsistent with the scheduling order and fail to overcome the clear showing that he received the notices required by statute.

### III. THE COMMISSION VOTED TO FIND RIVERA VIOLATED SECTION 30122 AT EVERY ADMINISTRATIVE STAGE ON THE SAME FACTS

The original and amended complaints here are "reasonably related to the allegations" in the administrative proceedings. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1307 n.5 (11th Cir. 2018) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Rivera argues that, even if he had notice of the administrative process, the "Amended Complaint was premised upon new facts and legal theories" that were never presented to Rivera or the

11

Commission itself. (Motion 16-20.) But the question of whether the Amended Complaint has a sufficient factual and legal nexus with the original Complaint has twice been resolved by the Court and Rivera has presented no basis to re-litigate that here.

At summary judgment, the Court held that the "Amended Complaint essentially asserts the same factual allegations as the initial complaint." (Order at 2 (citing Amended Complaint).) In ruling on Rivera's earlier motion to dismiss, the Court found the Amended Complaint relates back under Fed. R. Civ. P. 15(c)(B), and explained "the conduct in this case is payments through one individual that is falsely reported in campaign finances. The conduct is the same as is alleged in the original Complaint." (Order Denying Def.'s Mot. to Dismiss, Apr. 16, 2019 (ECF No. 48) (transcript pages 33-34).)

Rivera's argument that the Amended Complaint is so different than the original complaint that he lacked notice also misreads the record. Each stage of the administrative process included all of the financial transactions in the Commission's complaints, the same statutory violation, and a reference to the same broadly applicable implementing regulation.

- **Reason to Believe** — The notification from the Commission placed Rivera on notice that the FEC found reason to believe Rivera knowingly and willfully violated 52 U.S.C. § 30122, among other statutory provisions. (FEC SOF, Exh. 33, Portner Decl. ¶ 3.) Included with this notification was a Factual and Legal Analysis, which described a scheme involving Rivera to "hide the true source of funds for Sternad's campaign by making contributions in the name of another and filing false disclosure reports with the Commission." (Peña-Wallace Decl. ¶ 3; Exh. 4 to Def's Mot to Dismiss, FEC 0237 (ECF No. 171-5).) The letter notified Rivera of three potential violations (exceeding the contribution limits, making contributions in the name of another, and exceeding the currency contribution limit). (Peña-Wallace Decl. ¶ 3.) The contribution in the name of another violation, 52 U.S.C. § 30122, became the cause of action in this case. The analysis cited the violations as "2 U.S.C. 441f [now 52 U.S.C. 30122] and 11 C.F.R. § 110.4(b)(1)(i)-(iii)." (Exh. 4 to Def's Mot to Dismiss, FEC 0237 (ECF No. 171-5)) The regulation clauses (i)-(iii) reference two manners of violation taken directly from the statutory language, as well as the helping or assisting regulation. 11 C.F.R. § 110.4(b)(1)(i)-(iii).

- **The General Counsel's Brief** — This brief concluded that there was probable cause to believe that David Rivera knowingly and willfully violated 52 U.S.C. § 20122 and 11 C.F.R.

12

110.4(b).  (Peña-Wallace Decl. ¶ 11.)  This brief provided notice to Rivera about violations of 52 U.S.C. 30122 as well as a citation to 11 C.F.R. § 110.4(b) generally.  (Exh. 1 to Peña-Wallace Decl. FEC 0400-413.)  The brief described how "Rivera orchestrated a scheme to funnel contributions to Sternad," "took extensive measures to conceal his identity," and how "Rivera, with Alliegro's help, coordinated and funded the production and distribution of those campaign materials."  (Exh. 1 to Peña-Wallace Decl. FEC 0400 (footnote omitted).)  It contained a chart showing the exact same transactions, among others, that were later included in the Amended Complaint in this action and specified that Rivera arranged these payments. (Exh. 1 to Peña-Wallace Decl. FEC 0410.)

- **Probable Cause Vote Certification** — The formal record of the vote is that the Commission found probable cause to believe that Rivera "knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)."  (Peña-Wallace Decl. ¶ 13 & Exh. 1 FEC 0875.)

- **Probable Cause to Believe Notice** — The notification from the Commission placed Rivera on notice that the FEC had found probable cause to believe and that Rivera "knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)." (*Id.*)  The notice did not cite or specify a particular clause of 11 C.F.R. § 110.4(b).  This notification attached a proposed conciliation agreement.  (*Id.*)  The letter also explained that Rivera could request an oral hearing before the Commission," an offer of which he did not avail himself.  (*Id.*)[6]

The original and Amended Complaint here thus are "reasonably related to the allegations" in the administrative proceedings.  *Hornsby-Culpepper*, 906 F.3d at 1307 n.5; *FEC v. Nat'l Rifle Ass'n.* (*"NRA"*), 553 F. Supp. 1331, 1336 (D.D.C. 1983) (dismissing counts "not related" to transactions that were the subject of the administrative proceeding").  Other cases

---

[6] Rivera cites and describes at length various agency procedures governing the enforcement process (Motion at 12-14, 18 n.11.), but fails to establish that any such procedures were not followed here.  In any event, each policy contained reservations of discretion and/or noted that the procedures were non-binding and did not create any rights.  *See Agency Procedure for Notice to Respondents in Non-Complaint Generated Matters*, 70 Fed. Reg. 38617, 38618 (Aug. 4, 2009); *Procedural Rules for Probable Cause Hearings,* 72 Fed. Reg. 64919, 64920 (Nov. 19, 2007); *Agency Procedure for Disclosure of Documents and Information in the Enforcement Process,* 76 Fed. Reg. 34986, 34992 (June 15, 2011); *Agency Procedures Following the Submission of Probable Cause Briefs by the Office of General Counsel*, 76 Fed. Reg. 63570, 63570-71 (Oct. 13, 2011).

confirm the relationship between the administrative matter and subsequent suit was sufficient here. *See also Kavanaugh v. Miami-Dade Cty.*, 775 F. Supp. 2d 1361, 1367 (S.D. Fla. 2011) (holding that "the inquiry becomes whether the claims raised in the judicial complaint are related to or grow out of the allegations" in the administrative matter); *Cooper v. Nielsen*, 298 F. Supp. 3d 197, 202 (D.D.C. 2018) (noting that the "subsequent lawsuit is typically limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations. ") *aff'd sub nom. Cooper v. Fed. Emergency Mgmt. Agency*, No. 19-5118, 2019 WL 6218791 (D.C. Cir. Nov. 15, 2019). While the administrative proceedings did include references to the specific helping or assisting subsection of the implementing regulation, 11 C.F.R. § 110.4(b)(1)(iii), that theory (and one transaction involving funds from a nonprofit that most appeared to be a helping or assisting violation) were deducted from the case when the Amended Complaint was filed. The Commission did not seek to incorporate new factual allegations or new statutory violations unrelated to those that the Commission approved during its three votes. *Hornsby-Culpepper*, 906 F.3d at 1307.

This case bears no resemblance to *NRA*, (Motion at 12), where the court found that the administrative process involved allegations regarding use of the NRA's charge accounts for certain transactions by its political action committee, referred to as the Beeson Allegations. The court dismissed separate counts in the complaint that were unrelated to the Beeson facts and violations that had been before the Commission. *NRA,* 553 F. Supp. at 1336. The dismissal occurred in the "unusual circumstances" that the litigation sought to involve different transactions and violations. *Id.* at 1338. This case involves transactions and statutory violations that were the subject of the administrative process.

## IV. THE FEC MET ITS OBLIGATION TO ATTEMPT TO CONCILIATE

The FEC met its obligation to attempt to reach a conciliation agreement in this case. When the Commission finds "probable cause" to believe that a violation of the Act has occurred:

> [T]he Commission shall *attempt*, for a period of at least 30 days, to correct or prevent such violation by informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved. Such *attempt* by the Commission to correct or prevent such violation may continue for a period of not more than 90 days.

52 U.S.C. § 30109(a)(4)(A)(i) (emphasis added). The plain reading of the statute is that the

14

Commission is required only to make an "attempt" to conciliate.

The Commission plainly did so here. Agency staff notified Rivera of the Commission's probable cause findings and sent a proposed conciliation agreement in an effort to attempt to correct the violations. (*See supra* pp. 2-3.) The letter and proposed agreement were sent to physical and email addresses of Rivera's that had previously been effective, and FEC counsel also sent an additional follow-up and placed several calls to Rivera. (*Id.*) Rivera's only response when he did receive one call was to claim a lack of receipt, but he did not comply with a request to provide an alternative address to which the papers could be sent. (*Id.*) The FEC made more than one "attempt," and the futility of further efforts had become apparent.

Judicial review of the conciliation process is limited, as the Supreme Court recently confirmed within the context of a similar provision governing pre-suit conciliation by the Equal Employment Opportunity Commission. The Court explained "the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice. Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 494 (2015).

Such a limited review is also appropriate in the context of FECA, particularly since the legislative history highlights the emphasis Congress placed upon the word "attempt" in the statute. As originally written, the statute provided that "the FEC is required to make *every endeavor* . . . to correct or prevent such violation by informal methods of conference, conciliation, and persuasion." 2 U.S.C. § 437g(a)(5)(A) (1976). In 1980, Congress removed the words "every endeavor" from the statute and replaced them with "attempt." FECA Amendments of 1979, Pub. L. No. 96-187, Title I, § 108, renumbered § 309, 93 Stat. 1359 (1980); 2 U.S.C. § 437g(a)(4)(A)(i) (1980). Congress made a deliberate decision to amend the standard in a way that significantly lowers the burden on the Commission and the quantity of resources the agency is required to expend upon each of its mandatory conciliation efforts. To transform the requirement of an "attempt" into a requirement that the Commission satisfy defendant's demands would ignore this legislative history and the plain

language of the statute.[7]

Moreover, it is well-established that agencies like the Commission are entitled to considerable deference when interpreting the statute that they administer and enforce. *Chemical Mfrs. Ass'n v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 125 (1985) ("This view of the agency charged with administering the statute is entitled to considerable deference; and to sustain it, we need not find that it is the only permissible construction . . . but only that [the agency's] understanding of this very 'complex statute' is a sufficiently rational one to preclude a court from substituting its judgment for that of [the agency]."). The Commission, which has broad discretionary authority over the administration and interpretation of the Act, "is precisely the type of agency to which deference should presumptively be afforded." *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37 (1981).

Federal courts have considered the FEC's conciliation efforts in two other cases in which the Commission initiated a civil action after unsuccessful conciliation attempts. In evaluating whether the Commission complied with the statutory requirement that it "attempt" to conciliate, a district court found it appropriate to show "high deference to the agency's action," emphasizing that deference is due to the FEC "because the FEC's bipartisan composition makes it especially fit to decide issues charged with the dynamics of party politics." *FEC v. Club For Growth, Inc.*, 432 F. Supp. 2d 87, 91 (D.D.C. 2006) (citation and quotation marks omitted). Club For Growth, like defendant in this case, argued that the court lacked subject matter jurisdiction because the Commission's conciliation offers were allegedly not made in good faith. The court rejected this allegation and denied the defendant's motion to dismiss, stating that the statutory language "requires that the FEC come to the conciliation table, but it doesn't instruct the FEC on the nature of its offerings." *Id*. at 92.

In *NRA*, 553 F. Supp. 1331 (D.D.C. 1983), the court denied defendants' motion to dismiss for lack of subject matter jurisdiction, which was in part based upon allegations that the Commission did not conciliate adequately. The Court specifically rejected defendants' argument that the "FEC has an affirmative duty to do more than mail two conciliation offers to the defendants

---

[7] The Commission's conciliation efforts are also required to be kept confidential just like the EEOC's. 52 U.S.C. § 30109(a)(4)(B)(i); *Mach Mining*, 575 U.S. at 492-93. Probing scrutiny of the conciliation process would "fail to give effect to the law's non-disclosure provision" and "undermine[] the conciliation process itself." *Id.* at 493.

16

prior to recommending suit." *Id*. at 1338.  The Court noted that the FEC acted reasonably in filing suit after "the defendant did not express a willingness to negotiate, but repeatedly refused to concede liability and respond on the merits to the FEC's proposals." *Id.* at 1340.  Furthermore, "even where the FEC may be found to have inadequately performed or omitted one or more of its notice or conciliation obligations, such error may be excused where the act or omission was not intentional and where it caused no harm or prejudice to the defendants with respect to their participation in the pre-suit and conciliation process." *Id*. at 1339.

Here, where the Commission has omitted none of its obligations and diligently sought to engage with Mr. Rivera, there is no basis for finding that the Commission has failed to "attempt" to conciliate.[8]  "A sworn affidavit from the [agency] stating that it has" provided notice of the allegation and tried to engage the respondent in some form of discussion, but "that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Mach Mining*, 575 U.S. at 494.  The Commission has provided such an affidavit here and Rivera presents no reason for any additional evidence to be required in this case.

## CONCLUSION

For the foregoing reasons, the Court should deny Rivera's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Respectfully submitted,

| | |
|---|---|
| Lisa J. Stevenson (Special Bar No. A5502354)<br>Acting General Counsel<br>lstevenson@fec.gov | /s/ Greg J. Mueller<br>Greg J. Mueller (Special Bar No. A5502376)<br>gmueller@fec.gov<br>Attorney |
| Kevin Deeley (Special Bar No. A5502355)<br>Associate General Counsel<br>kdeeley@fec.gov | /s/ Shaina Ward<br>Shaina Ward (Special Bar No. A5502563) |

---

[8] Even if the Court were to find that the FEC conciliation efforts were somehow inadequate, the proper remedy would be to stay the proceedings for conciliation discussions. *NRA*, 553 F. Supp. at 1333 (court may stay action pending cure by FEC); *EEOC v. Sears, Roebuck & Co.*, 504 F. Supp. 241, 262 (N.D. Ill. 1980) ("The sufficiency of the conciliation effort presents a question of whether the trial court should stay the proceeding for further conciliation, not whether it has jurisdiction over the cause.") (*citing EEOC v. Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978)); *Marshall v. Sun Oil Co.*, 605 F.2d 1331, 1339 n.8 (5th Cir. 1979) ("The Act's conciliation requirement is not jurisdictional. . . .  If a district court finds that the Secretary has not attempted conciliation sufficiently to comply with the Act, then the district court may stay proceedings to permit the future efforts that it deems necessary.").

April 14, 2021

sward@fec.gov
Attorney

FOR THE PLAINTIFF
FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, D.C.  20463
(202) 694-1650

**CERTIFICATE OF SERVICE**

I, Greg J. Mueller, certify that on April 14, 2021, a true and correct copy of the foregoing was served via the Court's ECF system upon the following:

Jeffrey D. Feldman, Esq.
jfeldman@trailblazerlaw.com
*Counsel for the Defendant David Rivera*

Roy J. Kahn, Esq.
rjk@roykahnlaw.com
*Counsel for Defendant David Rivera*

Respectfully submitted,

/s/ Greg J. Mueller
Greg J. Mueller (Special Bar No. A5502376)