UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-22643-Civ-COOKE/GOODMAN

FEDERAL ELECTION COMMISSION,

    Plaintiff,

v.

DAVID RIVERA,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**THIS MATTER** is before the Court upon Defendant David Rivera's Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion") (ECF No. 171), filed March 31, 2021. Plaintiff Federal Election Commission ("FEC" or "the FEC") filed its response in opposition to the Motion on April 14, 2021. ECF No. 172. Thereafter, Defendant David Rivera ("Defendant", "Defendant David Rivera", or "Rivera") filed his reply in support of the Motion on April 21, 2021. ECF No. 174. Accordingly, the Motion is ripe for adjudication.

The Court having reviewed the Motion, the briefing related thereto, the relevant legal authorities, and being fully advised, finds, for the reasons set forth below, that the Motion should be denied.

### BACKGROUND

This case stems from campaign funds related to a 2012 political campaign for a U.S. congressional seat. Rivera was a United States Congressman representing Florida's 25th Congressional District from January 2011 through January 2013. ECF No. 1 at ¶ 6. In 2012, Rivera unsuccessfully ran for re-election as the Republican candidate to represent Florida's redrawn 26th Congressional District. *Id.* Rivera lost that election to Democrat Joe Garcia ("Garcia"). *Id.* at ¶ 12. Garcia became the Democratic nominee in the 2012 general election after defeating three other candidates in the Democratic primary, including Justin Lemar Sternad ("Sternad"). *Id.*

The FEC alleges that during the Democratic primary, Rivera executed a scheme to secretly provide funds to Sternad's campaign to weaken Garcia, who was likely to be Rivera's general election opponent. *Id.* at ¶¶ 1, 26. In April 2012, Rivera initiated the scheme when he met with his associate, Ana Sol Alliegro ("Alliegro"), and directed her to approach Sternad with an offer to provide financial support to his primary campaign. *Id.* at ¶¶ 14-15. Alliegro did so, and Sternad accepted the offer. *Id.* ¶ 15. At Rivera's direction, Alliegro then spent the next few months acting as an intermediary, transmitting funds to Sternad, the Sternad Committee, and the vendors providing services to that Committee. *Id.*

Rivera moved to dismiss the initial complaint on November 22, 2017. This Court granted Rivera's motion on September 27, 2018. In granting Rivera's motion, the Court followed *Federal Election Comm'n v. Swallow*, 304 F. Supp. 3d 1113, 1115 (D. Utah 2018) where the District of Utah determined that Congress did not intend to create secondary liability for "helping and assisting" in making a contribution in the name of another when it enacted the Federal Election Campaign Act ("FECA") and dismissed the case. *Swallow*, 2018 WL 1725429, at *4. In *Swallow*, the court also enjoined the FEC from enforcing § 110.4(b)(1)(iii) and ordered that § 110.4(b)(1)(iii) be stricken from the Code of Federal Regulations.[1] *Id.* *Swallow* was fatal to the FEC's claim against Rivera because the initial complaint's sole claim for relief – titled "First Cause of Action" – unambiguously stated that it arose under § 110.4(b)(1)(iii). Consequently, the court dismissed the initial complaint.

The FEC filed an Amended Complaint on January 15, 2019. The Amended Complaint essentially asserts the same factual allegations as the initial complaint. *See generally*, Am. Compl. Importantly, however, the Amended Complaint does not claim that Rivera violated § 110.4(b)(1)(iii). Nor does the Amended Complaint seek relief under § 110.4(b)(1)(iii). Instead, the Amended Complaint's sole cause of action asserts that "Defendant David Rivera knowingly and willfully violated 52 U.S.C. § 30122; 11 C.F.R. § 110.4(b)(1)(i) (same), by making contributions in the name of others to Justin Lamar Sternad's 2012 primary campaign in Florida's 26th U.S. Congressional District." ECF No. 41 at ¶ 35. Likewise, in the Amended Complaint's prayer for relief the FEC seeks a declaration that

---

[1] Because it did not appear that the FEC appealed the decision in *Swallow*, *see* Docket Sheet, *Federal Election Comm'n v. Swallow*, No. 2:15-cv-439-DB (D. Utah 2018), the injunction remained in place.

Rivera knowingly and willfully violated 52 U.S.C. § 30122; 11 C.F.R. § 110.4(b)(1)(i) by making more than $55,601 in contributions in the name of another. *Id.* at ¶ A, p. 9. Rivera moved to dismiss the Amended Complaint on February 1, 2019. The Court denied Rivera's motion after holding a hearing on the same. *See* ECF Nos. 48 and 49. Accordingly, the Amended Complaint is the operative pleading in this action.

## LEGAL STANDARD

"[A] motion to dismiss for lack of subject matter jurisdiction . . . can be based upon either a facial or factual challenge to the complaint." *Lebedinsky v. United States*, No. 20-21911-CIV, 2020 WL 6544638, at *2 (S.D. Fla. Nov. 6, 2020) (quoting *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). "When dealing with a facial attack, 'the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised,' that is, 'the court must consider the allegations in the plaintiff's complaint as true.'" *Id.* (quoting *McElmurray*, 501 F.3d at 1251). Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 1529. "[W]hen the attack is factual, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Optima Tobacco Corp. v. US Flue-Cured Tobacco Growers, Inc.*, 171 F. Supp. 3d 1303, 1306 (S.D. Fla. 2016) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "If a district court determines that it lacks subject matter jurisdiction, it 'is powerless to continue' and must dismiss the complaint." *Id.* (quoting *Nalls v. Countrywide Home Servs., LLC*, 279 F. App'x 824, 825 (11th Cir.2008)).

## ANALYSIS

Here, in what appears to be a last-ditch effort to avoid a final judgment being entered against him, Defendant David Rivera – after litigating this case for over three years and after the entry of summary judgment in the FEC's favor – now challenges the Court's subject matter jurisdiction in this case. Defendant David Rivera's unavailing arguments are: 1) the statute of limitations provided for in 28 U.S.C. § 2462 lapsed prior to the filing of this action; and 2) the FEC failed to provide Defendant David Rivera with pre-suit notice of his violations of 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)(1)(i). These arguments fail.

**I.     This case was filed prior to the expiration of the statute of limitations.**

According to Defendant David Rivera, this Court lacks subject matter jurisdiction because:

> Sternad concealed the true source of the May and June 2012 contributions by listing them as personal loans in his July 10, 2012 Quarterly Report. . . For that reason, the sole offense charged in this case, making contributions in the name of another, was complete and had accrued for statute of limitation purposes no later than July 10, 2012, the date when Sternad falsely reported the May and June 2012 contributions in his Quarterly FEC 3 Report as personal loans. Subsequent contributions were not separate offenses but were part of the same alleged scheme, which merely increased the size of an awardable civil penalty. Indeed, this is exactly how the FEC pled its case in its pre-suit correspondence to Rivera, in its proposed Conciliation Agreement and in its two complaints in this case. The operative filing date in this case is July 14, 2017, which was more than five years after July 10, 2012, the latest date that this case accrued for statute of limitations purposes. Accordingly, this case was filed beyond the statute of limitations, necessitating, under Judge King's decision in *Graham*, dismissal with prejudice of the FEC's claim for civil penalties and declaratory relief.

ECF No. 171 at pp. 9-10 (internal citations omitted). This argument is flawed.

Here, as painstakingly detailed in this Court's Order granting summary judgment in favor of the FEC, Defendant David Rivera's contributions in the name of another occurred when he: made multiple cash payments to third-party vendors providing services to the Sternad campaign from approximately July 14, 2012 to August 8, 2012, took steps to hide his identity, and directed others not to disclose him as the true source of those cash payments. *See* ECF No. 163. Further, as the Court previously held in its Order Denying Defendant David Rivera's Motion to Dismiss the Amended Complaint, the Amended Complaint related back to the date of the filing of the original complaint – July 14, 2017. *See* ECF No. 49 at 33:21-34:4. Thus, the fact that the Amended Complaint was filed on January 15, 2019, is of no significance.

In addressing Defendant's erroneous statute of limitations argument, the Court will not belabor itself or this Order by repeating what it has already found through its prior rulings in this case, but, rather, incorporates those rulings and analyses herein. The Court notes, moreover, that it is not impressed with Defendant David Rivera's argument that his discrete repeated violations of FECA should be treated as a single incident that accrued on July 10,

2012. The logical extension of Defendant's argument is that he could have gone on violating FECA with impunity after July 10, 2012. While this argument may be a convenient position for Defendant David Rivera to take, the Court finds that it lacks legal merit and would create an untenable legal precedent.

Further, Defendant's reliance upon *SEC v. Graham*, 21 F. Supp. 3d 1300, 1308 (S.D. Fla. 2014), *aff'd in part, rev'd in part and remanded sub nom. Sec. & Exch. Comm'n v. Graham*, 823 F.3d 1357 (11th Cir. 2016), is misplaced. There, Judge King held that the statute of limitations in 28 U.S.C. § 2462 is jurisdictional; however, Judge King went on to hold that the SEC failed to adduce evidence demonstrating that the individual defendants committed violations prior to the expiration of the five-year statute of limitations period provided for under 28 U.S.C. § 2462. *See id.* at 1312 (stating "[t]he SEC's investigation of this case stretches back at least to late 2007. After nearly seven years—and even with the 'many legal tools' at its disposal to aid in investigation—the SEC has not been able to point to any act of offering or sale of alleged securities by any of the defendants in the 'red zone,' after January 30, 2008. Although the complaint alleged that Cay Clubs' business activities continued from 'no later than November 2004 to at least July 2008,' Am. Compl. DE # 41 at ¶ 2, the SEC's proof has not borne out that allegation as to the individual defendants."). That is certainly not the situation presented here. Again, as this Court's summary judgment order details, Defendant committed multiple discrete acts in violation of FECA – outside of and after Sternad's July 10, 2012 Quarterly Report. *See* ECF No. 163.

It is disingenuous and smacks of hypocrisy that Defendant David Rivera – a former U.S. Congressman – now insists that the Court conveniently ignore his multiple discrete violations of a federal law in favor of his strained reading of a statute of limitations and his interpretation of the FEC's claims against him. Defendant's argument also lacks legal support. *See Sec. & Exch. Comm'n v. Almagarby*, No. 17-62255-CIV, 2020 WL 4783405 (S.D. Fla. Aug. 17, 2020) ("The continuing violation doctrine is aimed at ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of [his] wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time. Here, at least some the violative conduct occurred within the limitations period. . . . Because some of that conduct occurred within the limitations period, the statute of limitations does not bar the SEC's disgorgement claim.") (citing *United States v.*

*Spectrum Brands, Inc.*, 924 F.3d 337, 350 (7th Cir. 2019) and *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983)). *See also Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) ("Petitioners argue that a claim based on fraud accrues—and the five-year clock begins to tick—when a defendant's allegedly fraudulent conduct occurs. That is the most natural reading of the statute."); *accord Sec. & Exch. Comm'n v. Marin*, 982 F.3d 1341, 1354 (11th Cir. 2020) ("In *Gabelli v. SEC*, the Supreme Court held that an SEC claim for a civil monetary penalty accrues for § 2462 purposes at the time of a defendant's securities law violation[.]"). Thus, the Court finds that Defendant's multiple discrete violations of FECA accrued for purposes of the statute of limitations at the time that Defendant committed the violations. As a consequence, the Court finds that the five-year statute of limitations provided for under 28 U.S.C. § 2462 did not expire prior to the filing of this action on July 14, 2017. And, therefore, Defendant David Rivera's arguments to the contrary fail.

    II.    **Defendant's Pre-Suit Notice Arguments Fail**

        **A. The FEC provided Defendant David Rivera with pre-suit notice of his alleged violations.**

Next, Defendant argues that this Court lacks subject matter jurisdiction because the FEC purportedly failed to provide him with pre-suit notice in accordance with FECA. The Court disagrees.

Congress authorized the FEC to "formulate policy" under FECA (*see, e.g.*, 52 U.S.C. § 30106(b)(1)), and to make rules and issue advisory opinions. 52 U.S.C. §§ 30107(a)(7), (8); *id.* at §§ 30108; 30111(a)(8). The FEC is also authorized to institute investigations of possible violations of the Act, 52 U.S.C. § 30109(a)(1)-(2), and the agency has exclusive jurisdiction to initiate civil enforcement actions in the United States district courts. *Id.* at §§ 30106(b)(1), 30107(a)(6), 30107(e), 30109(a)(6). Defendant is correct that certain notification requirements are triggered when the FEC determines that an individual, such as Defendant, may have violated FECA. To this end, in relevant part, 52 U.S.C. § 30109(a)(2) provides:

> If the Commission, upon receiving a complaint under paragraph (1) or on the basis of information ascertained in the normal course of carrying out its supervisory responsibilities, determines, by an affirmative vote of 4 of its members, that it has reason to believe that a person has committed, or is about to commit, a violation of this Act . . . the Commission shall, through its chairman or vice chairman, notify the person of the alleged violation. Such notification shall set forth the factual basis for such alleged violation. The Commission shall make an investigation of such

> alleged violation, which may include a field investigation or audit, in accordance with the provisions of this section.

52 U.S.C.A. § 30109(a)(2). Likewise, in pertinent part, 52 U.S.C. § 30109(a)(3) states:

> The general counsel of the Commission shall notify the respondent of any recommendation to the Commission by the general counsel to proceed to a vote on probable cause pursuant to paragraph (4)(A)(i). With such notification, the general counsel shall include a brief stating the position of the general counsel on the legal and factual issues of the case. Within 15 days of receipt of such brief, respondent may submit a brief stating the position of such respondent on the legal and factual issues of the case, and replying to the brief of general counsel. Such briefs shall be filed with the Secretary of the Commission and shall be considered by the Commission before proceeding under paragraph (4).

52 U.S.C.A. § 30109(a)(3). Thus, in accordance with the above provisions, the FEC is required to notify alleged violators when the Commission has found reason to believe they committed violations, 52 U.S.C. § 30109(a)(2), and when the General Counsel is recommending probable cause to believe they committed violations, 52 U.S.C. § 30109(a)(3).

Here, the FEC provided Defendant with the required notifications. Incredibly, Defendant stated in his Answer to the FEC's Amended Complaint that he "admits the Commission notified him of its 'reason to believe' findings in a letter date dated September 11, 2013." ECF No. 50, Answer at ¶ 27. Likewise, Defendant admitted that "[o]n September 25, 2013, [Defendant's] counsel responded to the Commission's reason-to-believe letter, stating that [Defendant] denied violating the Act as alleged by the Commission." *Id.* at ¶ 28; ECF No. 41, Am Compl. at ¶ 28.

In addition to Defendant's admissions in his Answer to the Amended Complaint, the FEC also presented this Court with ample evidence demonstrating that it mailed the required notices to Defendant on multiple occasions at his physical address and provided them by email to Defendant's email address. *See, e.g.*, ECF No. 142-36, Portner Decl. at ¶ 5; ECF No. 172-1 Peña-Wallace Decl. ¶ 11; and ECF No. 171-15, Peña-Wallace June 27, 2017 memorandum to file regarding a telephone call with David Rivera. Indeed, the FEC has even provided the Court with evidence demonstrating that a person at Defendant's physical address (the address that was listed as Defendant's address for purposes of his campaign filings) refused delivery of the UPS package containing the FEC's notice materials. ECF No. 172-1, Peña-Wallace Decl. at ¶ 11; *see also* ECF No. 172-1, (Exhibit 1) at pp. 48-49. The

evidence further demonstrates that those documents were also emailed to Defendant at the email address that he had been using to respond to the FEC's prior communications; however, not surprisingly, Defendant never responded to that particular FEC email. ECF No. 172-1, Peña-Wallace Decl. at ¶ 11.

In the face of the FEC's evidence, Defendant David Rivera, in a declaration, claims that "he never saw" the General Counsel's April 28, 2017 probable cause notification letter (which included the General Counsel's brief), the FEC's proposed conciliation agreement, or Ana Peña-Wallace's April 28, 2017 email forwarding the FEC's April 28, 2017 probable cause notification letter (and the General Counsel's brief) to him "prior to receiving them in discovery in this case." ECF No. 171-12 at ¶ 2. Defendant makes these assertions despite the fact that the FEC provided this Court with evidence reflecting that the FEC sent these documents to Defendant at his physical address[2] (which, again, was the address he listed for himself in his campaign filings) and emailed them to Defendant at his comcast.net email address.[3] As a result, the Court finds that Defendant's assertions lack credibility. And, despite

---

[2] In a Declaration, Defendant conveniently claims that he "did not reside" at the address to which the FEC mailed the pre-suit notices during April and June 2017 as he was purportedly residing between "Haiti, Dominica, and Central Florida" during the exact timeframe that the FEC attempted to mail those notices to him. ECF No. 171-12 at ¶ 6. Defendant, however, did not provide this Court with any evidence, other than his own self-serving assertions, to support his proposition that he was residing in "Haiti, Dominica, and Central Florida" at the time that the pre-suit notices were mailed to him. Even if the Court were to find credible Defendant's assertions that he was purportedly residing in "Haiti, Dominica, and Central Florida" around the time that the FEC mailed him the pre-suit notices, the Court also finds it telling that Defendant did not provide an updated address to the FEC for receipt of correspondence related to the FEC's investigation despite his full knowledge that he was being investigated for violating FECA. Nor did Defendant employ the use of a mail forwarding service to ensure that he received important documents such as the FEC's pre-suit notice documents during his purported foray abroad. The Court also finds it telling that Defendant does not proffer any explanation as to why he purportedly did not receive any of the emails that the FEC sent to him providing the pre-suit notices despite the evidence reflecting that he received other emails from the FEC. Cumulatively, these omissions on Defendant's part leave the Court with the inescapable conclusion that Defendant is, once again, being less than honest and forthright.

[3] The Court notes that the FEC has presented evidence demonstrating that Defendant used his comcast.net email address to respond to discovery in this case in 2020. ECF No. 133-11. This further undermines Defendant's contention that he purportedly did not receive the emailed pre-suit notices that the FEC sent to that very same email address. And it further

Defendant's urgings that the FEC has purportedly failed to demonstrate that he received the notice materials, the Court is unwilling to put the burden of proving a negative on the FEC. The evidence demonstrates that the FEC sent the pre-suit notice documents to Defendant. That is enough. Defendant's argument to the contrary fails.

### B. The Amended Complaint Was Not Subject to Separate Pre-Suit Notice

In addition to arguing that the FEC did not comply with the pre-suit notice requirements of FECA overall, Defendant also argues that the Amended Complaint was subject to separate pre-suit notice. This is incorrect. As explained below, the Court finds that Defendant Rivera's contention that the legal and factual allegations in the Amended Complaint were subject to separate pre-suit notice lacks legal merit.

As the FEC correctly points out, each stage of the administrative process included all of the financial transactions in the Commission's complaints, the same statutory violation, and a reference to the same broadly applicable implementing regulation. In fact, the "reason to believe" notification from the Commission placed Rivera on notice that the FEC found reason to believe Rivera knowingly and willfully violated 52 U.S.C. § 30122." ECF No. 142-36 at p. 6. Additionally, the formal record of the Commission's vote is that the Commission found, by a vote of 5-0, probable cause to believe that Rivera "knowingly and willfully violated 52 U.S.C. § 30122 and 11 C.F.R. § 110.4(b)." ECF No. 172-1, Peña-Wallace Decl. at ¶ 13; *see also id.* Exh. 1 at p. 53. Likewise, the General Counsel's brief concluded that there was probable cause to believe that Defendant knowingly and willfully violated 52 U.S.C. § 20122 and 11 C.F.R. 110.4(b). ECF No. 172-1, Peña-Wallace Decl. at ¶ 11. The brief also provided notice to Defendant David Rivera of the violations of 52 U.S.C. 30122 as well as a citation to 11 C.F.R. § 110.4(b). *See id.*, Exh. 1 at pp. 33-46. Further, the brief described how "[defendant David] Rivera orchestrated a scheme to funnel contributions to Sternad," "took extensive measures to conceal his identity," and how "Rivera, with Alliegro's help, coordinated and funded the production and distribution of those campaign materials." *Id.* And the brief even contained a chart showing the exact same transactions, among others, that were later included in the Amended Complaint in this action and specified that Rivera arranged these payments. *Id.* at p. 37. As such, the Court agrees with the FEC and finds that

---

undermines Defendant's veracity in this case.

while the Amended Complaint differs from the original complaint in that it omits allegations and claims that Defendant Rivera "helped and assisted in making a contribution in the name of another", the Amended Complaint is reasonably related to the allegations in the administrative proceeding such that the Amended Complaint was not subject to separate pre-suit notice. To hold otherwise, would impose a burden on the FEC to have to re-initiate agency action at the Commission level any time a complaint is amended in federal court. This is beyond what the law requires. *See Kavanaugh v. Miami-Dade Cty.*, 775 F. Supp. 2d 1361, 1367 (S.D. Fla. 2011) (recognizing in the context of EEOC charges "the inquiry becomes whether the claims raised in the judicial complaint are related to or grow out of the allegations" in the administrative matter); *Cooper v. Nielsen*, 298 F. Supp. 3d 197, 202 (D.D.C. 2018) (noting that the "subsequent lawsuit is typically limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations.") *aff'd sub nom. Cooper v. Fed. Emergency Mgmt. Agency*, No. 19-5118, 2019 WL 6218791 (D.C. Cir. Nov. 15, 2019). And because the Court finds that the Amended Complaint was not subject to separate pre-suit notice, the Court finds that Defendant's argument that the Court lacks subject matter jurisdiction purportedly because "the FEC, prior to filing the Am.Compl., never gave him notice, an 'opportunity to respond' to or attempted to reach a conciliation agreement with him about these new allegations[]", ECF No. 171 at p. 18, fails.[4]

Moreover, Defendant's reliance upon *Fed. Election Comm'n v. Nat'l Rifle Ass'n of Am.*, 553 F. Supp. 1331, 1337 (D.D.C. 1983), misses the mark. There, the court found that it lacked

---

[4] It must be noted that the Court finds Defendant's pre-suit notice arguments disconcerting. This is so because from the evidence before this Court it is quite apparent that Defendant actively took steps to avoid the multiple notices that the FEC sent to Defendant's physical address and email address. By refusing or ignoring the physical delivery of notice materials from the FEC and then not responding to emails containing notice materials from the FEC but now arguing that the FEC failed to provide him with those same notice materials, at worst, Defendant is attempting to "game the system" or, at best, "have his cake and eat it too". Regardless of which cliché the Court employs to describe Defendant's actions, the fact is that this Court cannot and will not countenance such behavior. Indeed, doing so would serve to erode the rule of law and encourage others to follow the "shining" example that Defendant – a former U.S. Congressman – has set through his brazen actions in violating a federal law and his attempts to subvert justice and avoid the repercussions of his unlawful acts throughout the underlying FEC administrative proceeding and the proceedings before this Court. Defendant's actions poignantly remind the Court of Francis Bacon's warning: "If we do not maintain justice, justice will not maintain us."

subject matter jurisdiction to hear certain allegations and claims raised in an FEC complaint because the FEC "did not include any of the detailed facts supporting [those allegations and claims] . . . in its notice to the defendants or in the General Counsel's brief[.] Moreover, the failure to include [those] charges eliminated any possibility of ensuring the defendants a fair opportunity to demonstrate that no action should be taken or otherwise respond to the FEC's charges." *Id.* Here, as discussed above, the FEC's notification documents, including the General Counsel' brief, layout the particular transactions and statutory violations at issue in the Amended Complaint. And, unlike in *Fed. Election Comm'n v. Nat'l Rifle Ass'n of Am*, the Amended Complaint here does not add factual details and allegations that were not subject to the administrative process. As a consequence, the Court finds that the Amended Complaint was not subject to separate pre-suit notice.

In short, based upon the above and in reliance upon the ample evidence that the FEC has presented, the Court finds that the FEC: filed this action prior to the expiration of statute of limitations period set forth in 28 U.S.C. § 2462, complied with its pre-suit notification requirements under 52 U.S.C. § 30109, and attempted to conciliate in compliance with 52 U.S.C. § 30190(a)(4)(A)(i); as a result, Defendant's arguments for dismissal fail.

## CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **ORDERED and ADJUDGED** as follows:

1. Defendant David Rivera's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 171) is **DENIED**.
2. By separate order, the Court will enter final judgment in favor of the FEC by which it will issue a civil penalty against Rivera in the amount of $456,000 and costs in the amount of $927 for Defendant's repeated failure to appear for deposition and failure to comply with this Court's Orders.
3. Additionally, in the final judgment, the Court will enter a permanent injunction against Rivera to prohibit him from making campaign contributions in the name of another in violation of 52 U.S.C. § 30122. As such, **within five days of the date of this Order**, the FEC shall provide the Court with a proposed order setting forth the civil penalty, costs, and permanent injunction to be entered against Defendant David Rivera. Said proposed order shall be sent, via

email, to cooke@flsd.uscourts.gov. And counsel for Defendant must be cc'ed on said email.

4. In the interim, the Clerk is directed to **CLOSE** this case solely for administrative purposes.

**DONE and ORDERED** in Chambers at Miami, Florida this 23rd day of March 2022.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:

*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of Record*